# MARGARET ROTH JUDD v. SANATORIUM COMMISSION OF HENNEPIN COUNTY.
## STATE DEPARTMENT OF HOME ECONOMICS, RESPONDENT.[1]

December 31, 1948.

No. 34,729.

*Reynolds & McLeod,* for relators.

*T. M. Hynes,* for respondent Margaret Roth Judd.

*J. A. A. Burnquist,* Attorney General, *Victor H. Gran,* Assistant Attorney General, and *R. A. Woychik,* State Compensation Attor-

[1]Reported in 35 N. W. (2d) 430.

ney, for respondent State of Minnesota, University of Minnesota, Department of Home Economics.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review an order of the industrial commission.

The facts are not in dispute that Margaret Roth Judd, referred to as the employe, sustained an accident on July 16, 1946, which disabled her for a period of 13 weeks and resulted in the loss of the use of her right index finger. There is no dispute as to medical expenses incurred.

Employe alleged in her petition before the industrial commission that the Sanatorium Commission of Hennepin County and the State of Minnesota, University of Minnesota, Department of Home Economics, were her employers on the date of her injury. Both the county and the state denied that she was in their employ and also denied that she was an employe under the terms of the compensation law.

Mrs. Judd, who desired to become a dietitian, commenced her education for that purpose in 1941. Her first year of college work was taken at Lawrence College in Wisconsin, after which she transferred to the home economics department of the University of Minnesota about September 1, 1942. She graduated from this department in July 1945 and received a degree of bachelor of science in home economics. During the time she was studying for this degree, she paid a quarterly tuition fee to the University of Minnesota of about $32, plus some incidental costs. In order for a student to be accepted by an accredited hospital as a dietitian and in order to have professional standing, the American Dietetic Association requires that the student have one year of postgraduate internship. This latter course is offered by the University of Minnesota and is recognized by that institution as an interim course. After receiving her degree, Mrs. Judd applied for and was accepted by the university for one of these internship courses. The university employs an associate professor in dietetics, which person is the director of the course prescribed for the training of dietitian interns.

Because of the peculiar requirements of the course, the university has affiliate hospitals to which students are sent for specialized and varied training. During the period of her postgraduate internship, employe served during the first eight months at University Hospitals, receiving her board, room, and laundry. The next two months were spent in the Minneapolis Community Health Center in order to obtain community health experience, and the following six weeks at Eitel Hospital, for small private hospital experience. While at the latter institution, she received board, room, and laundry, and while at the community center, board and room. After completing her service at Eitel Hospital, in order to obtain large community hospital experience during her internship, employe entered Glen Lake Sanatorium, where she received board, room, and laundry. The sanatorium is operated by the Sanatorium Commission of Hennepin County. It was while assisting the meat cook in the kitchen at the sanatorium that employe was injured when her hand was caught in an electrically driven food chopper, which accident resulted in these proceedings.

The issues for determination are:

(1) Was Margaret Roth Judd an employe within the meaning of the workmen's compensation act at the time she was injured?

(2) If she was an employe, was she an apprentice within the meaning of the workmen's compensation act and thus entitled to the increased benefits provided by M. S. A. 176.11, subd. 7?

(3) If she was an employe at the time she sustained the accidental injury, was she on that date in the employ of the Sanatorium Commission of Hennepin County or was she an employe of the state?

The referee found, among other things, that on the date of her accidental injury, July 16, 1946, Mrs. Judd was in the employ of the Sanatorium Commission of Hennepin County in the capacity of a dietitian under a Minnesota contract of hire at a weekly wage, including board, room, and laundry, of $15, and awarded employe compensation against the sanatorium commission and its insurer at a weekly rate of $10 for a period of 48 weeks, or $480, on the

basis of a ten-week healing period, and 100 percent disability to her right index finger. Upon appeal to the industrial commission, it sustained the findings of the referee that at the time of her injury Mrs. Judd was in the employ of the sanatorium commission, but vacated and set aside his finding that she was acting in the capacity of a dietitian on the date of her injury and found that at that time she was employed in the capacity of an apprentice dietitian. The commission also found that at the time of the injury to employe the average weekly wage of female staff dietitians below the rank of supervisor employed at Glen Lake Sanatorium, where the injury occurred, was $45.88 per week. It awarded employe compensation against the sanatorium commission and its insurer at the weekly rate of $24 per week for 48 weeks, or $1,152, representing a 13-week healing period, and 100 percent permanent partial disability to her right index finger, thus changing the amount of the award of the referee. In other respects, not in dispute here, the findings of the referee were sustained by the commission.

We have repeatedly stated in previous cases that it is the established policy of this court in reviewing the findings of the industrial commission that our function is not to determine whether on the facts the decision of the commission is correct, or even preferable to another, but rather, and only, to determine whether the findings have sufficient basis of inference reasonably to be drawn from the facts. The same policy has been expressed by this court in cases saying that the findings of fact of the commission are entitled to very great weight and that this court will not disturb them unless they are manifestly contrary to the evidence. 6 Dunnell, Dig. & Supp. § 10426; Fisher v. Fisher, 226 Minn. 171, 32 N. W. (2d) 424. In determining whether the facts and the reasonable inferences to be drawn from them sustain the findings of the industrial commission, the evidence must be viewed in the light most favorable to such findings. Liakos v. Yellow Taxi Co. 225 Minn. 34, 39, 29 N. W. (2d) 481, 484, and cases cited.

█  With reference to the first question for determination, as to whether Mrs. Judd was an employe within the meaning of the work-

men's compensation act, M. S. A. 176.01, subd. 8(2), defines an employe as follows:

"Every person in service of another under any contract of hire, expressed or implied, oral or written, * * *."

In Nesseth v. Skelly Oil Co. 176 Minn. 373, 374, 223 N. W. 608, this court set out the real test as to whether a person is an independent contractor or an employe. The test stated there is whether the asserted employer, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner and means in which and by which the details of the work are to be performed. See, also, Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134; Ledoux v. Joncas, 163 Minn. 498, 204 N. W. 635; Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421; Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004; Lynch v. Hutchinson Produce Co. 169 Minn. 329, 211 N. W. 313; Rouse v. Town of Bird Island, 169 Minn. 367, 211 N. W. 327; Morss v. Murphy T. & S. Co. 170 Minn. 1, 211 N. W. 950; Moore v. Kileen & Gillis, 171 Minn. 15, 213 N. W. 49; Krause v. Bodin, 172 Minn. 467, 215 N. W. 838; Schonberg v. Zinsmaster Bak. Co. 173 Minn. 414, 217 N. W. 491.

In Tillquist v. State Dept. of Labor and Industry, 216 Minn. 202, 12 N. W. (2d) 512, it was held that a district boiler inspector, whose work in inspecting boilers in his district was principally the mechanical and manual labor involved, was a state employe rather than a state official, even though he may have been appointed for a two-year term, and therefore that he was covered by the workmen's compensation act at the time of his death.

In the instant case, we have a situation where Mrs. Judd was assisting the meat cook in the kitchen at Glen Lake Sanatorium when she was injured. Even though we may concede that she was there primarily to obtain further practical experience in connection with her internship, the sanatorium was still receiving the benefit of her labor in connection with the preparation of food for its patients at the time of her injury. It also had exclusive control

and direction over the manner and means by which this work was to be performed while she was at the institution. We agree with the opinion of the commission that "The character of the work out of which the accident arose being of a menial or mechanical nature, done on behalf of the institution, justifies a finding that Mrs. Judd was an employe."

■ If she was an employe, the next question is whether Mrs. Judd was an apprentice (dietitian) within the meaning of the workmen's compensation act at the time of her injury and thus entitled to the increased benefits provided by § 176.11, subd. 7, which reads:

"If any employee entitled to the benefits of the workmen's compensation law is a minor or an apprentice of any age and sustains injuries due to an accident arising out of and in the course of his employment resulting in permanent total or permanent partial disability, the weekly earnings, for the purpose of computing the compensation to which he is entitled, shall be the weekly earnings which such minor or apprentice would probably earn after arriving at legal age or completing the apprenticeship, if uninjured, which probable earnings shall be approximately the average earnings of adult journeymen workmen of the same sex below the rank of superintendent or general foremen in the department of the plant or industry in which such minor or apprentice was employed at the time of his injury."

The word "compensation" is defined in § 176.01, subd. 2, as follows:

"The word 'compensation' indicates the money benefits to be paid on account of injury or death."

In vacating and setting aside the finding of the referee that employe was not employed in the capacity of a dietitian at the time of her injury, the commission must have concluded that, inasmuch as the employe had not completed her internship course nor received a certificate as a dietitian at the time of her injury, she could not be considered as serving in the capacity of a dietitian,

but rather in the capacity of an apprentice dietitian at the time of her injury on July 16, 1946. In view of the particular nature of her work on the date of her injury, it is our opinion that she was acting as an apprentice and entitled to the increased benefits provided for by § 176.11, subd. 7.

The workmen's compensation act does not define the term "apprentice." Relators call our attention in their brief to § 178.06, where, under the chapter heading of "Master and Apprentice," the term "apprentice" is defined, but we do not consider that definition as applicable under the facts and circumstances of the instant case.

In the case of Heget v. Christ Hospital, 26 N. J. Misc. 189, 58 A. (2d) 615, the question presented was whether the relation of employer-employe existed between the parties at the time of an injury (to the employe) in connection with a workman's compensation case. There, the petitioner was accepted by the hospital as a candidate to become a nurse. Prior to this acceptance, she had taken and successfully passed an examination for entrance to the school for nurses conducted at the hospital and had paid the established entry fee of $75. For the first five months petitioner served as a probationer. Thereafter, she was formally accepted by the hospital as a student nurse. This period of training was to last three years, during which time she received no wage compensation except room, board, and incidentals. At the completion of the training course, she was to receive a certificate from the hospital and would be eligible to take the examination conducted by the state board and qualify as a registered nurse. Her duties consisted of taking temperatures and doing other incidental matters pertaining to the care and treatment of patients. While on duty, she was entirely subject to the control and supervision of the head nurse at the hospital. In her formal petition filed in the case under the workmen's compensation act, petitioner alleged that she was injured by an accident arising out of and in the course of her employment. The hospital, in its answer, denied that the relationship of employer-employe existed between the parties. The commissioner sustained the contention

of the hospital and dismissed the petition for lack of jurisdiction. On appeal, the appellate court said in part (26 N. J. Misc. 189, 58 A. [2d] 616):

"After a careful consideration of the record in this case it is my opinion that the status of a student nurse who renders service to the public and to the respondent hospital for the pecuniary gain of the latter is very similar to the old time apprentice. While all of the attributes and legal consequences of an apprenticeship relation are not present here, most of them are. In Black's Law Dict., 3rd Ed., p. 129, an apprentice is defined as 'a person, usually a minor, bound in due form of law to a master, to learn from him his art, trade or business, and to serve him during the time of his apprenticeship.' Lyon v. Whitemore, 3 N. J. L. 845. Thus, the apprentice rendered services to his master in some trade or employment with the primary purpose of learning the trade, business or profession of the master. The apprentice usually received no remuneration for his services outside of his board and lodging. Stokes v. Hatcher, 4 N. J. L. 84. For services rendered by him, no doubt the master received payment from the public. Bedford v. Newark Machine Co., 16 N. J. Eq. 117."

The court further expressed an opinion from the circumstances described by the petitioner in her testimony in that case that a relationship of master and servant existed between the parties, and remanded the case to the bureau to be tried on its merits.

In construing § 176.11, subd. 7, with reference to a minor in Hanson v. Hayes, 225 Minn. 48, 51, 29 N. W. (2d) 473, 475, this court said:

"'* * * There is no basis for a distinction under which there would be one rate of compensation for the healing period and another for the injuries themselves. * * * That being true, a minor is entitled to compensation for both the healing period and for injuries under the schedule computed upon his probable earnings after arriving at legal age, if uninjured."

Inasmuch as subd. 7 also provides that if any employe entitled to the benefits of the workmen's compensation act is an apprentice of any age, the benefits to such apprentice should be computed upon the same basis as computed for a minor in the Hanson case, *supra*.

We hold that the findings of the commission that the employe in the instant case was an apprentice within the meaning of the workmen's compensation act and thus entitled to the increased benefits provided by § 176.11, subd. 7, is correct and that the award of compensation on the basis of such apprenticeship should be sustained.

■ We now come to the final question for consideration, and that is whether Mrs. Judd was in the employ of the Sanatorium Commission of Hennepin County or an employe of the state of Minnesota on the date of her injury. The referee found, and the commission sustained his finding, that she was in the employ of the Sanatorium Commission of Hennepin County at Glen Lake Sanatorium on July 16, 1946, the date of her injury. It is our opinion that this finding is correct, and we so hold. It is undisputed from the record that she was injured on the date in question while she was assisting the meat cook in the kitchen at the Glen Lake Sanatorium in connection with the preparation of food to be served to the patients confined in the institution.

It is the established policy that the workmen's compensation act should receive a broad and liberal construction in the interest of workmen to carry out its policy. 6 Dunnell, Dig. & Supp. § 10385.

We cannot agree with relators that the rules in the following cases are controlling and decisive of the issues involved herein. The fact situations in each of those cases are different in our opinion from the facts in the case at bar.

In O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636, the Percy Vittum Company was a corporation engaged in the business of selling livestock. The company exercised control over all of its employes. Percy Vittum, the president of the company, also owned a farm on which he had a manager who carried on the farming operations, including the hiring and discharging of farm employes. The corporation was under the workmen's compensation

act and carried an insurance policy insuring it against liability for accidents. Vittum as an individual filed a notice with the industrial commission that he elected to come under the workmen's compensation act in his business of farming, but posted no notice that he had elected to come under the act. O'Rourke, an employe of the corporation, went to Vittum's farm at the latter's request for the purpose of getting some trees. Vittum had several thousand cedar trees on the farm and sold quantities of them from time to time for transplanting. While in the act of digging the trees on this farm, O'Rourke fell and died as a result of his injuries. The court held that the corporation was liable under the compensation act because at the time the work was being done the relationship of employer and employe continued to exist as between the corporation and O'Rourke, as he at all times received his wages from the corporation and at no time received wages from Vittum individually. It further commented that Vittum had not brought himself within the act, but even if he had it would be doubtful if compensation could be awarded against him inasmuch as he had paid no wages to O'Rourke and O'Rourke expected none from him.

In the instant case, there can be no question that employe was receiving her compensation from the Sanatorium Commission of Hennepin County in the form of board, room, and laundry at Glen Lake Sanatorium at the time of her injury.

Campbell v. Connolly Contracting Co. 179 Minn. 416, 229 N. W. 561, also cited as controlling, must be distinguished from the instant case. In that case, we held that a company owning an instrumentality which it furnished to another for hire with two trained employes to manage it remained the employer of the employes so furnished. That is not the situation here.

In Dahl v. Wunderlich, 194 Minn. 35, 259 N. W. 399, an employe originally hired out to Wunderlich was sent by Wunderlich's agent to the camp of one Preston, where he reported to one of Wunderlich's mechanics who was in charge of certain road equipment rented to Preston by Wunderlich and operated on Preston's job. The employe was paid by Wunderlich and was at all times subject

to his control. The dispute in that case was between Wunderlich and Preston, each claiming that the other was the employer. The employe had not been informed that he was working for any employer except the one originally hiring him. We held in that case that such new employer-employe relationship could not be thrust upon an employe without his knowledge and consent. In the instant case, the petitioner knowingly and willingly assumed the position and responsibilities of an employe of each institution to which she was sent, and the principles of the Wunderlich case are not applicable.

Affirmed.

[1]Reported in 35 N. W. (2d) 427.