JAMES T. DEICHMILLER, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.*, (Eugene T. Zonca, Indiv. and d/b/a Zonca Plumbing, Appellee).

First District (Industrial Commission Division)   No. 1—85—3092WC

Opinion filed August 20, 1986.

Cohn, Lambert, Ryan, Schneider & Harman, Ltd., of Chicago (Louis J. Cohn, of counsel), for appellant.

Braun, Lynch, Smith & Strobel, Ltd., of Chicago (John A. Strobel, of counsel), for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Claimant, James T. Deichmiller, filed an application for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) for back injuries allegedly sustained in the course of his employment with respondent, Eugene T. Zonca, individually and d/b/a Zonca Plumbing. An arbitrator awarded claimant temporary total incapacity benefits under section 8(b)(1) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(b)(1)) and wage differential benefits under section 8(d)(1) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(d)(1)) based upon a finding that claimant was permanently incapacitated from pursuing the duties of a union journeyman plumber.

Following a hearing on review, the Industrial Commission increased the amount of temporary total incapacity benefits awarded to claimant and reduced the section 8(d)(1) wage differential award, finding that it would be "mere speculation" to assume that claimant, who was working as a temporary union journeyman plumber at the time of the accident, would eventually have become a union journeyman plumber. The circuit court of Cook County confirmed the Commission's decision, and claimant has perfected the instant appeal to this court.

Claimant maintains on appeal that the Commission erred in calculating the amount of section 8(d)(1) wage differential benefits awarded to him. We affirm.

The claimant testified at the hearing before the arbitrator as follows. During the latter part of March 1980, claimant was 25 years of age and was working as a plumber for Eugene T. Zonca, d/b/a Zonca Plumbing (Zonca). Claimant's duties as a plumber included loading, hauling, and installing water heaters which weighed approximately 180 pounds and moving, tearing out, and hauling cast-iron boilers which weighed 50 to 400 pounds.

While performing his employment duties on April 1, 1980, claimant experienced severe pain in his lower back when he attempted to move a portion of a cast-iron boiler plate which weighed approximately 200 pounds. Claimant's co-workers transported claimant to the emergency room of an Evanston hospital. The emergency-room physician examined certain X rays of claimant's back, prescribed muscle relaxants and analgesics, and released claimant.

Claimant, who continued to experience severe lower-back pain, sought medical treatment from Dr. Samuel Fraerman, who examined claimant and admitted him into a Highland Park hospital on April 3, 1980. In an evidence deposition, Dr. Fraerman testified as follows. Dr. Fraerman determined that claimant had a compression fracture of the twelfth thoracic vertebra and herniated discs in the lumbar and lumbosacral regions of his back. During claimant's hospitalization, Dr. Fraerman performed a myelogram and prescribed conservative treatment for claimant. Although claimant continued to have positive neurological findings, Dr. Fraerman released claimant from the hospital on May 15, 1980. Claimant continued under Dr. Fraerman's care until December 1980, when Dr. Fraerman discharged claimant and ordered him not to engage in any lifting or in any form of heavy employment. Dr. Fraerman considered claimant to be a "very fragile risk" subject to a recurrence of his disc problems unless he followed the permanent lifting restrictions.

In April 1981 claimant was examined at Zonca's request by Dr. Ronald Pawl, a neurological surgeon. In an evidence deposition, Dr. Pawl testified that (1) all the orthopedic and neurological tests which he performed on claimant were normal, (2) any compression of claimant's vertebra was caused by either an inflammatory disease or a degenerative change, and (3) claimant's back condition was temporary. In a letter to Zonca's counsel, Dr. Pawl was of the opinion that claimant could engage in employment activities including plumbing as long as such activities did not require "repeated bending, lifting and twisting or lifting more than 30—50—lbs. occasionally."

At the hearing before the Commission, claimant testified that he continues to experience pain in his back if he remains in either a standing or sitting position for substantial periods of time. Claimant further testified that he is "very careful and [tries] not to" lift any object which weighs more than 30 pounds.

The parties do not contest the Commission's findings that claimant's back injuries were caused by an accident which arose out of and in the course of his employment with Zonca and that claimant was entitled to a section 8(d)(1) earnings-loss award because he was partially

incapacitated from pursuing his usual and customary line of employment. Claimant maintains on appeal, however, that the Commission erred in calculating the amount of his earnings-loss award. In order to fully understand this argument, additional evidence must be examined.

The following evidence concerning the claimant's employment history was adduced at the hearings before the arbitrator. Claimant began working as an apprentice plumber for Zonca, a nonunion shop, approximately five years prior to the April 1980 accident. In November 1978 claimant moved to Wisconsin and earned approximately $6.50 or $6.75 per hour as a hardware-store employee. In April 1979 he returned to work for Zonca Plumbing and was earning approximately $9 or $9.25 per hour at the time of the April 1, 1980, accident.

Wayne Zonca, the vice-president of Zonca, testified as follows. In order to continue doing business in Cook County, Zonca was required to unionize in 1979. At that time, Mr. Zonca and claimant were admitted into Chicago Journeymen Plumbers' Local Union 130 as temporary journeymen plumbers and began paying dues. Mr. Zonca testified that in order for a temporary journeyman plumber to be entitled to union journeyman plumber wages and benefits, the temporary journeyman had to pass the union journeyman-plumber examination. However, in order to be eligible to take this examination, a temporary journeyman was required to pay monthly union dues for a period of one year. Accordingly, if claimant had continued to pay his union dues, he would have been eligible to take this examination in November 1981. Following claimant's injury, Mr. Zonca passed the examination. Mr. Zonca testified that based upon his experience as a plumber, his knowledge of claimant's skills and the difficulty of the examination, he believed that claimant would have passed the examination and obtained permanent journeyman-plumber status. The record indicates that claimant did not take this examination.

Mr. Zonca also testified that he would rehire claimant based on his past work performance, but claimant would not be able to perform the employment duties of a plumber due to his permanent lifting restrictions. Testifying at the December 4, 1981, hearing before the arbitrator, Mr. Zonca stated that a journeyman plumber earned approximately $16.20 per hour.

Claimant introduced into evidence the schedule of union plumber wage rates for the members of Chicago Journeymen Plumbers Local Union 130 for the period between January 1, 1979, and May 31, 1982.

Claimant testified that although he actively sought work after being released by Dr. Fraerman in December 1980, he did not work dur-

ing the period from the April 1980 accident to September 1981. On September 16, 1981, claimant began working as a traveling sales representative for the Expert Corporation (Expert). His employment duties included traveling to various hardware stores in order to sell hardware and plumbing supplies. Claimant earned a fixed salary of $325 per week.

The arbitrator awarded claimant temporary total disability benefits for the 76-week period from the April 1, 1980, accident through September 1981 when he began working for Expert. The arbitrator also determined that claimant was entitled to a section 8(d)(1) earnings-loss award equal to 66⅔% of the difference between the average amount which he would have been able to earn in the full performance of the duties of a union journeyman plumber and the average amount which he was actually earning as a traveling sales representative with Expert.

Claimant testified at the hearing before the Commission on review as follows. He worked for Expert until December 20, 1981, when claimant and Expert "mutually decided" to terminate claimant's employment due to the stiffness and pain which he experienced in his lower back and left leg as a result of the traveling which he was required to do. Although he actively sought employment, claimant was not employed during the period from December 21, 1981, through early May 1982.

On May 5, 1982, claimant began working as a car salesman at Clifford Chrysler-Plymouth at Libertyville, Illinois. Claimant stated that he earned a salary of $100 per week plus sales commissions. Claimant introduced payroll records which indicated that during the approximately 30-week period prior to the hearing before the Commission, he had earned $8,546.59, or $284.89 per week.

The Commission increased the award of temporary total disability benefits to include the 19²/₇-week period between December 21, 1981, the day after claimant terminated his employment with Expert, and May 4, 1982, the day before claimant started working at Clifford Chrysler-Plymouth.

The Commission further determined that claimant was entitled to a section 8(d)(1) earnings-loss award; however, finding that it would be "merely speculation" to assume that claimant would have become a journeyman plumber, the Commission calculated the earnings-loss award by subtracting the average amount which claimant actually earned after the accident from the amount he would have earned as a fourth-year apprentice plumber. Specifically, the Commission awarded claimant $56.67 per week for the 13⁵/₇-week period when he was em-

ployed by Expert. This weekly amount is equal to 66⅔% of the difference in the average amount he would have earned as a fourth-year apprentice plumber ($410 per week) and the average amount he earned as a sales representative of Expert ($325). In addition, the Commission awarded claimant $83.41 per week for the period from May 5 through the duration of his disability. This weekly amount is equal to 66⅔% of the difference between the average amount he would have earned as a fourth-year apprentice plumber ($410 per week) and the average amount he was earning as a car salesman ($284.89 per week).

As claimant properly points out, section 8(d)(1) provides that an employee who becomes partially incapacitated from pursuing his usual and customary line of employment as a result of an accidental injury shall receive compensation for the duration of his disability:

"equal to 66⅔% of the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(1).)

Claimant contends that the Commission erred in failing to base his earnings-loss award in part on the average amount which he would have been able to earn as a journeyman plumber.

Claimant notes that the necessity of approximating future-earning capacity has often been recognized both by judicial decisions and statutes in the special case of young workers or apprentices. Claimant relies on the following foreign-jurisdiction cases in support of his contention that the Commission erred by refusing to calculate his earnings-loss award based in part on the average amount which he would have earned as a journeyman plumber: *Judd v. Sanatorium Commission of Hennepin County* (1948), 227 Minn. 303, 35 N.W.2d 430; *Nosowich v. Central Islip State Hospital* (1949), 274 A.D. 1080, 85 N.Y.S.2d 674; and *Pascoe v. Workmen's Compensation Appeals Board* (1975), 46 Cal. App. 3d 146, 120 Cal. Rptr. 199. However, these cases may be distinguished from the case at bar.

In *Judd*, the Minnesota Supreme Court considered the claim of a State university, home economics department graduate who was injured while assisting a meat cook in a kitchen at a county sanatorium during her internship course which was required for her to be accepted by an accredited hospital as a dietitian. The court found that claimant was an "apprentice dietitian" and was entitled to benefits based upon what she would have earned as a dietitian. However, a

Minnesota statute provided that if a minor or an apprentice of any age sustained injuries resulting from a work-related accident, the weekly earnings, for purposes of computing the compensation benefits, "shall be the weekly earnings which such minor or apprentice would probably earn after arriving at legal age or completing the apprenticeship, if uninjured." (227 Minn. 303, 308, 35 N.W.2d 430, 434.) The Illinois Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) contains no similar provision.

In *Nosowich*, a claimant, who contracted pulmonary tuberculosis during the course of her employment, was awarded benefits based on the earnings she would have received as a registered nurse even though at the time she contracted the tuberculosis she was completing her training as a student nurse. (*Nosowich v. Central Islip State Hospital* (1949), 274 A.D. 1080, 1080, 85 N.Y.S.2d 674, 675.) *Nosowich* may be distinguished from the case at bar because in that case the claimant eventually satisfied the requirements which were necessary for her to attain registered nurse status and actually worked as a registered nurse after she contracted tuberculosis. In the case at bar, claimant made no attempt to satisfy the requirements which were necessary for him to attain the status of a permanent union journeyman plumber and did not work as a plumber after his accident.

In *Pascoe*, an employee, who also was a nursing student, had been hired under an agreement whereby she would work full-time as a nurse's aide until she obtained her nursing license, whereupon she would work as a nurse at a substantial salary increase. The court determined that: (1) where the employee was injured on the job after being called in to work as a part-time substitute before the beginning of her full-time job, she was entitled to an award of benefits based on full-time employment; and (2) that the claimant was entitled to an award based on a nurse's salary from the date on which she received her license. (*Pascoe v. Workmen's Compensation Appeals Board* (1975), 46 Cal. App. 3d 146, 146-47, 120 Cal. Rptr. 199, 205-06.) However, the claimant in *Pascoe* also had satisfactorily completed the requirements necessary for her to become a registered nurse and had actually worked as a registered nurse after her accident.

Claimant also urges that he introduced sufficient evidence to prove that he would have been able to earn journeyman-plumber wages within a reasonable time after his accident and that the Commission's finding that it would be "mere speculation" to assume that claimant would have become a journeyman plumber is against the manifest weight of the evidence. Claimant notes that (1) he began paying union dues in November 1979 and would have been eligible to

take the union journeymen-plumber examination in November 1980, approximately seven months after the accident, and (2) even if he had failed the examination on the first attempt, he could have taken the examination again.

Claimant also points out that Mr. Zonca testified that based upon his experience as a plumber, his knowledge of the claimant's skills and the difficulty of the examination, he believed that claimant would have passed the examination. Claimant contends that Mr. Zonca's testimonial admissions against interest are binding against Zonca and that the Commission afforded insufficient weight to such admissions.

■ We recognize that judicial admissions are conclusive and may not be contradicted. A testimonial judicial admission is one within the particular knowledge of the witness. If testimony is deliberate, clear and unequivocal as to facts within the party's peculiar knowledge, he will be held to such testimony as a judicial admission. (*Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 12-13, 415 N.E.2d 599, 608.) However, Mr. Zonca's testimony amounts to no more than his opinion that claimant would have passed the union journeymen-plumber examination. His subjective, individual opinion is not a "concrete fact" and thus could not be a judicial admission. Accordingly, the Commission properly could have discounted his opinion. 92 Ill. App. 3d 1, 12-13, 415 N.E.2d 599, 608.

■ We conclude, therefore, that the Industrial Commission properly refused to base the earnings-loss award on the average amount which claimant "might have earned" as a union journeyman plumber.

In the case of *General Electric Co. v. Industrial Com.* (1986), 144 Ill. App. 3d 1003, this court recently determined that the Commission properly decided to compute an earnings-loss award based in part on the average amount which claimant would have earned at the time of the hearing in the job classification which she had at the time of the accident. (144 Ill. App. 3d 1003, 1014.) This comports with the language of section 8(d)(1) requiring awards to be calculated based in part on the average amount which an employee would have been able to earn in the "occupation in which he was engaged at the time of the accident." (Ill. Rev. Stat. 1983, ch. 38, par. 138.8(d)(1).) In the case at bar, the evidence of record did not permit the Commission to infer that claimant's "occupation" at the time of the accident was that of a permanent union journeyman plumber.

■ We conclude, therefore, that the Commission properly determined that it would have been "mere speculation" to assume that claimant would have become a journeyman plumber. The record indicates that claimant never took the union examination. In fact, claim-

ant did not testify that he ever intended to take the examination. It is axiomatic that liability under the Act cannot be premised on speculation or conjecture but must be based solely on the facts contained in the record. (*Arbuckle v. Industrial Com.* (1965), 32 Ill. 2d 581, 585, 207 N.E.2d 456, 458-59.) Similarly, an earnings-loss award cannot be based on speculation as to the particular employment level or job classification which a claimant might eventually attain.

A Pennsylvania court recently determined:

> "[There is nothing in the Pennsylvania Workmen's Compensation Act] which suggests that [claimant's] wages should be computed on the basis of the rate of pay of a position to which claimant had not only not attained but indeed one to which she might never have attained." *Burroughs v. Workmen's Compensation Appeal Board* (1983), 73 Pa. Commw. 459, 463, 458 A.2d 648, 650.

Similarly, there is nothing in the Illinois Act which would have required the Commission to compute claimant's earnings-loss award based on the amount which he might have earned as a union journeyman plumber, a position he never attained.

Claimant argues in the alternative that the Commission erred in awarding him compensation based in part on the average amount which he would have earned as a fourth-year apprentice plumber because there is no evidence in the record to support a finding that claimant was a fourth-year apprentice plumber. Claimant notes that the evidence indicates that he was a temporary union journeyman plumber at the time of the accident.

■ After examining the evidence of record, we conclude that the Commission did not err in awarding earnings-loss benefits based in part on the average amount which claimant would have earned as a fourth-year apprentice plumber ($410 per week, or $10.25 per hour).

The evidence indicates that claimant had worked for Zonca for approximately five years prior to the April 1980 accident. However, claimant worked in a Wisconsin hardware store for approximately six months in late 1978 and early 1979. Accordingly, the Commission could have found that claimant had worked as a plumber for approximately 4½ years at the time of the accident.

Moreover, the schedule of union plumber wage rates introduced by claimant indicates that a fourth-year apprentice plumber, which was the highest nonjourneyman job classification which a plumber could attain, earned $9.25 per hour at the time of the accident and $10.25 per hour between June 1, 1980, and May 31, 1982. Claimant testified that he earned $9 or $9.25 per hour at the time of the acci-

dent. As a result, the Commission properly could have (1) found that claimant, who had not attained permanent journeyman-plumber status, was being compensated at the time of the accident as a fourth-year apprentice plumber, and (2) awarded earnings-loss benefits to claimant based in part on the average amount which he would have earned as a fourth-year apprentice plumber at the time of the hearings before the arbitrator and the Commission.

One further point must be addressed. The latest schedule of union plumber wage rates introduced into evidence by claimant indicates the wage rates for fourth-year apprentice plumbers through May 31, 1982. As a result, there is no evidence in the record as to the wage rate of a fourth-year apprentice plumber between May 31, 1982, and the November 29, 1982, hearing before the Commission. However, neither party attempted to introduce any evidence at that hearing as to the wage rates of union plumbers. Accordingly, the Commission was required to base its calculations on the wage rates contained in the record and refrain from speculating as to possible increases in the wage rate of fourth-year apprentice plumbers. The Commission did not err in so calculating claimant's earnings loss award.

Claimant also points out that the circuit court of Cook County confirmed the Commission's award in a judgment entered on September 19, 1985, finding that such award was not contrary to the manifest weight of the evidence. In a September 18, 1985, memorandum of decision, the circuit court stated:

> "There was no evidence as to the number who take the [union journeymen plumber examination] and either pass or fail. Therefore, two references can be made because of the absence of the inevitability of a given result: first, he would pass, and second, that he would fail. Obviously, because of the absence of certitude, at best, there can only be a probability projection. And the projection, of necessity, requires speculation."

The claimant apparently argues that (1) the foregoing language indicates that the circuit court was requiring that claimant prove with "certitude" that he would have passed the examination, and (2) such a requirement places an impermissible restraint on claimant's right to appeal because it would be logically impossible for claimant to prove with "certitude" that he would pass the examination.

■ It is axiomatic that a court, when reviewing an award made by the Commission, may not disturb the factual findings of the Commission unless the findings are contrary to the manifest weight of the evidence. It is not the function of the court in such cases to try disputed questions of fact or to weigh evidence. (*Wilson v. Industrial*

*Com.* (1972), 51 Ill. 2d 522, 524, 282 N.E.2d 700, 702.) A close reading of the memorandum of decision indicates that the circuit court was merely analyzing the permissible inferences which the Commission could have drawn from the evidence of record. The language of both the memorandum of decision and the judgment indicates that the circuit court fully understood its role and properly applied the "manifest weight of the evidence" standard of review.

For the reasons stated herein, we affirm the judgment of the circuit court of Cook County.

Affirmed.

WEBBER, P.J., and BARRY, LINDBERG, and McNAMARA, JJ., concur.