702 N.E.2d 172 (1998)
299 Ill. App.3d 662
234 Ill.Dec. 6
Salvatore DIVITTORIO, d/b/a Salvatore's Painting, Appellant,
v.
The INDUSTRIAL COMMISSION et al. (Kristen Firtik, a Minor, Through Her Mother and Best Friend, Kathy Buhle-Blake, Appellee).
No. 1-97-1862 WC.
Appellate Court of Illinois, First District, Industrial Commission Division.
September 29, 1998.
Rehearing Denied November 17, 1998.
*174 Nyhan, Pfister, Bambrick & Kinzie, P.C., Chicago, for Appellant.
Goldstein, Fishman, Bender & Romanoff, Chicago (Robert J. Smoler and Peter N. Stein, of counsel), for Appellee.
Justice RAKOWSKI delivered the opinion of the court:
In order for a child to be entitled to the workers' compensation benefits of her injured father who died from causes unrelated to his injury, she must prove that she was his "dependent." This appeal addresses the circumstances under which a child is considered a "dependent" pursuant to section 8(e)(19) of the Workers' Compensation Act (Act) (820 ILCS 305/8(e)(19) (West 1996)). Is claimant a dependent where she was owed a legal right of support from her father, where she received actual support for an extended period of time, and where she could reasonably rely on future support? We think so. We also find that it was proper for claimant to be substituted in place of her deceased father before arbitration commenced and that her father's leg injury had reached a state of permanency before he died. Therefore, we affirm the trial court's confirmation of the Industrial Commission's (the Commission) decision.

I. FACTS
While working for Salvatore Divittorio, d/b/a Salvatore's Painting (employer), decedent, Kenneth Firtik, fell into a sewer hole and injured his left hip. Decedent was diagnosed with an intertrochanteric fracture and ultimately underwent two surgeries. During the first surgery, decedent's doctor, Dr. T. Huang, implanted a four-hole plate into decedent's hip and affixed a guidepin to the femur shaft. Although decedent had an excellent *175 recovery, Dr. Richard Shermer, State Farm's medical expert, opined in a written report that decedent exhibited "a mild permanent residual associated with the surgery and the subsequent plate fixation." In other words, claimant had a mild restriction when flexing his hip. In hopes of relieving his chronic pain, decedent underwent a second surgery to remove the hardware on February 4, 1992.
No expert opinion was presented regarding decedent's recovery after the second surgery, but Marie Firtik, decedent's mother, did testify about his behavior and appearance after the second surgery. She stated that he had difficulty getting in and out of chairs and putting on his shoes. She also testified that he alleviated his pain by taking pain medication at least once a day and that it seemed his pain and leg injury made him depressed.
On August 14, 1992, decedent died from chronic alcoholism. Because decedent's claim had not reached arbitration, claimant, Kristen Firtik, and Marie Firtik filed another application for adjustment of claim before the Commission.
Claimant was born on September 30, 1986, and on December 10, 1987, decedent was adjudged to be her biological father. The circuit court of Cook County entered an order against decedent, requiring him to support claimant and to reimburse the Illinois Department of Public Aid for monies expended on behalf of claimant. However, no amounts were ever determined for support payments or for reimbursement to the Illinois Department of Public Aid.
Claimant's mother, Kathy Buhle-Blake, testified that decedent provided support until claimant reached age three. Decedent visited about four times per month, and on each visit, he gave her between $5 and $30 for claimant's support. On claimant's birthdays, decedent also gave her $20 to $30 for claimant's benefit, or he bought claimant small gifts. She also testified that Marie Firtik gave her two bonds, which named decedent as the beneficiary, worth $70 each. She estimated that claimant cost about $120 per week to support.
The arbitrator found that decedent's injuries arose out of and were sustained in the course of his employment and that decedent was entitled to temporary total disability benefits totaling $219.34 per week for a period of 42 6/7 weeks. Additionally, the arbitrator determined that, under section 8(d)(2) of the Act, decedent suffered a 16% permanent disability of the person as a whole and awarded decedent $197.40 per week for 80 weeks. 820 ILCS 305/8(d)(2) (West 1996). Finding that claimant and Marie Firtik were survivors pursuant to section 8(h) of the Act, the arbitrator awarded decedent's benefits to them in equal shares. 820 ILCS 305/8(h) (West 1996).
Employer appealed to the Commission. The Commission affirmed the arbitrator's award of temporary total disability. However, the Commission vacated the arbitrator's finding that decedent suffered a permanent disability pursuant to section 8(d)(2) and instead found that decedent suffered a specific loss pursuant to 8(e) in that decedent lost 40% of the use of his left leg. 820 ILCS 305/8(e) (West 1996). The Commission awarded $197.40 a week for 80 weeks, the same award that the arbitrator rendered under section 8(d)(2).
The Commission also found that Marie Firtik was not entitled to decedent's award under section 8(e)(19) because she failed to show that she was dependent upon decedent. Nonetheless, the Commission concluded that claimant was a dependent under section 8(e)(19). The Commission based its decision on the fact that the circuit court entered an order stating that decedent was claimant's father, decedent was under a duty to support claimant, and that decedent was obligated to reimburse the Illinois Department of Public Aid for any support rendered to claimant.
Employer appealed to the circuit court of Cook County, which confirmed the Commission's findings. We have jurisdiction pursuant to Supreme Court Rule 301. 155 Ill.2d R. 301.

II. DISCUSSION

A. Dependency under Section 8(e)(19) of the Workers' Compensation Act

Section 8(e)(19) delineates the means by which a specific loss award is *176 distributed upon a worker's death from causes unrelated to the compensated injury. 820 ILCS 305/8(e)(19) (West 1996). Unlike similar provisions within the Workers' Compensation Act, section 8(e)(19) does not automatically entitle the deceased worker's children, or children to whom the decedent owed a legal obligation to support, to receive the worker's benefits. Compare 820 ILCS 305/8(e)(19) (West 1996) (providing benefits for widows, widowers, or dependents), with 820 ILCS 305/7(a) (West 1996) (providing benefits for widows, widowers, or children and defining child to include "a child whom the deceased employee was legally obligated to support") and 820 ILCS 305/8(h) (West 1996) (including "child" in the list of beneficiaries). Section 8(e)(19) provides in pertinent part:
"19. In a case of specific loss and the subsequent death of such injured employee from other causes than such injury leaving a widow, widower, or dependents surviving before payment or payment in full for such injury, then the amount due for such injury is payable to the widow or widower and, if there be no widow or widower, then to such dependents, in the proportion which such dependency bears to total dependency." (Emphasis added.) 820 ILCS 305/8(e)(19) (West 1996).
Apparent from the language of section 8(e)(19) is that only widows and widowers of the deceased worker are expressly entitled to the worker's benefits. All others, including decedent's children, must prove that they were dependent upon decedent to be entitled to receive decedent's specific loss payments. As defined within the context of the Act, dependency
"[I]mplies a present existing relation between two persons where one is sustained by the other or looks to or relies on the aid of the other for support or for reasonable necessaries consistent with the dependent's position in life. [Citation.] The decisive test is whether the contributions were relied upon by the applicant for his means of living, judging by his position in life, and whether he was to a substantial degree supported by the employee at the time of the latter's death." In re Estate of Hardaway, 26 Ill.App.2d 493, 496, 168 N.E.2d 796 (1960).
See also Diss v. Industrial Comm'n, 52 Ill.2d 339, 341, 288 N.E.2d 430 (1972).
In the instant case, the evidence shows that the circuit court ordered decedent to support claimant and to repay the Illinois Department of Public Aid for any monies expended on claimant's behalf. Claimant's mother also testified that decedent provided approximately $5 to $30 for claimant's support about two to four times per month up until claimant was three years old. After age three, however, decedent was restrained from seeing claimant and her mother and no longer contributed to her support. The Commission concluded that claimant was a dependent and entitled to decedent's award solely on the fact that decedent owed claimant a legal obligation of support.
Employer, however, contends that the Commission erred by deciding that claimant was a dependent. Employer argues that the provision's language in conjunction with the usage of the term "dependent" in the context of the Act precludes claimant from receiving her father's award because she was not actually dependent upon decedent when he died. Under employer's argument, a child is a dependent only where the worker is providing her with the necessities of life when he dies. Although we agree that a child is a dependent under those circumstances, we do not believe that dependency is necessarily foreclosed where such facts do not exist.
Our research reveals that Illinois courts have yet to determine whether a child under claimant's circumstances should be considered a dependent under the Act. Nonetheless, our research does reveal that other jurisdictions in cases similar to the one sub judice find dependency where a child proves that the deceased worker owed her a legal obligation of support and that there was a reasonable expectation of support at the time of the worker's death. See 5 A. Larson & L. Larson, Larson's Workers' Compensation Law § 63.31, at 11-162 (1997); see, e.g., Lawhon Farm Services v. Brown, 60 Ark.App. 64, 71, 958 S.W.2d 538, 541 (1997); Hoskins v. Rogers Cold Storage, 52 Ark.App. 219, 916 S.W.2d 136, 139 (1997); James Gibbons Co. *177 v. Hess, 44 Md.App. 216, 220-21, 407 A.2d 782, 785 (1979); Porter Seed Cleaning, Inc. v. Skinner, 1 Ark.App. 230, 234-35, 615 S.W.2d 380, 382 (1981); Hegwald v. Clarkson Construction Co., 7 Kan.App.2d 375, 376-77, 642 P.2d 573, 574 (1982); Doyle's Concrete Finishers v. Moppin, 268 Ark. 167, 170, 594 S.W.2d 243, 245 (1980); Roach Manufacturing Co. v. Cole, 265 Ark. 908, 913, 582 S.W.2d 268, 270-71 (1979); Kosmicki v. Aspen Drilling Co., 76 N.M. 234, 237-38, 414 P.2d 214, 216 (1966); Bankston v. Prime West Corp., 271 Ark. 727, 732, 610 S.W.2d 586, 590 (Ark. App.1981). This approach allows the court to be cognizant of the realities of familial relationships and the fact that children are entirely subject to the whim of those who bear the responsibility of supporting them. Although we are not bound by these jurisdictions, we find their approach persuasive under the facts of this case and believe that it complements our mandate requiring us to give the Workers' Compensation Act a commonsense and liberal construction, especially in determining questions of dependency. American Steel & Wire Co. v. Industrial Comm'n, 411 Ill. 354, 357, 104 N.E.2d 260 (1952); see Plantation Manufacturing Co. v. Industrial Comm'n, 294 Ill.App.3d 705, 710, 229 Ill.Dec. 77, 691 N.E.2d 13 (1997).
To prove a "reasonable expectation" of support, a claimant must show that there was a reasonable probability that decedent would have fulfilled the obligation but for his death. See James Gibbons Co., 44 Md.App. at 220-21, 407 A.2d at 785; Kosmicki, 76 N.M. at 236, 414 P.2d at 215. To determine whether there was a "reasonable probability" that decedent would resume support, the court looks to the totality of the circumstances existing before decedent's death. See Roach Manufacturing Co., 265 Ark. at 912, 582 S.W.2d at 270. In essence, the court's task is to determine whether the lapse in support is temporary or signifies a permanent end of support. See James Gibbons Co., 44 Md.App. at 220, 407 A.2d at 785. Some facts to consider are the reasons for and the length of the lapse in support, and the mutual attitudes and financial abilities of the parties involved. See James Gibbons Co., 44 Md.App. at 221, 407 A.2d at 785; Kosmicki, 76 N.M. at 236-37, 414 P.2d at 216; Roach Manufacturing Co., 265 Ark. at 913, 582 S.W.2d at 271.
In the instant case, we believe the evidence shows that a reasonable expectation of support existed when decedent died. Decedent's regular contributions to claimant's care before being restrained from seeing claimant and her mother shows that decedent was sincerely willing to aid in claimant's support. Up until claimant was three years old, decedent visited her as often as four times per month at which times he gave $5 to $30 for claimant's support. Decedent also gave $20 to $30 to claimant's mother on claimant's birthdays, or he bought claimant small gifts. Claimant's mother also asserted that whenever claimant needed anything, decedent gave her money. We find these facts particularly compelling because they show that decedent took the initiative to support his daughter without compulsion; claimant's mother never secured a set amount of support under the court order, nor did she ever enforce it.
We also note that, under Illinois law, claimant's mother was never foreclosed from seeking modification of the court order. 750 ILCS 45/16 (West 1996). This is especially pertinent considering that claimant's expenses will naturally increase as she grows older and that claimant's mother may not be able to maintain claimant at her accustomed mode of living. See Roach Manufacturing Co., 265 Ark. at 913, 582 S.W.2d at 271 (considering whether the mother could maintain the child in her "accustomed mode of living" as the child's "necessary expenses would naturally increase as she grew older"). In light of these facts, we believe that there was a reasonable probability that, if prompted to, decedent would have fulfilled his support obligation if he had not died; as such, we find that a reasonable expectation of support existed when decedent died. Therefore, considering that there was a reasonable expectation of support, and that decedent owed claimant a legal obligation of support, we conclude that claimant was a dependent under the Act.

B. Substitution of Parties Before and During Arbitration

Employer argues that claimant should not have been substituted in place of *178 her deceased father under section 8(e)(19). Specifically, employer argues that section 8(e)(19) permits substitution of parties only after arbitration proceedings have concluded and not before proceedings have commenced. Employer reasons that the proceedings must be concluded before substitution occurs to prevent awards from being based on speculation and conjecture. Initially, we note that this argument was not raised below, and, as such, it has been waived. Doe v. Lutz, 253 Ill.App.3d 59, 66, 192 Ill.Dec. 365, 625 N.E.2d 325 (1993); Ruffino v. Hinze, 181 Ill.App.3d 827, 832, 130 Ill.Dec. 542, 537 N.E.2d 871 (1989). Moreover, waiver notwithstanding, we disagree with employer's assertions and find them meritless.
"The primary rule of statutory interpretation is that a court should ascertain and give effect to the intention of the legislature." Robbins v. Board of Trustees of the Carbondale Police Pension Fund, 177 Ill.2d 533, 539, 227 Ill.Dec. 116, 687 N.E.2d 39 (1997). The court should seek the legislative intent primarily from the statute's language. Robbins, 177 Ill.2d at 539, 227 Ill.Dec. 116, 687 N.E.2d 39. "Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature." Robbins, 177 Ill.2d at 539, 227 Ill.Dec. 116, 687 N.E.2d 39.
Although employer's arguments might have had merit before 1975, such is no longer the case. Before the 1975 amendment to section 8(e)(19), it read as follows:
"19. In a case of specific loss other than by amputation under the provisions of this paragraph the amount of which loss has been determined in proceedings before the Commission or an Arbitrator thereof under the provisions of this Act, or in a case of specific loss by amputation under the provisions of this paragraph, and the subsequent death of such injured employee from other causes than such injury leaving a widow or lineal dependents or both surviving before payment in full for such injury, then the balance remaining due for such injury is payable to such dependents, in the proportion which such dependency bears to total dependency." (Emphasis added.) Ill.Rev.Stat.1973, ch. 48, par. 138.8(e)(19).
See also Pub. Act 79-79, 1975 Ill. Laws 224, 257. At present, section 8(e)(19) reads:
"19. In a case of specific loss and the subsequent death of such injured employee from other causes than such injury leaving a widow, widower, or dependents surviving before payment or payment in full for such injury, then the amount due for such injury is payable to the widow or widower and, if there be no widow or widower, then to such dependents, in the proportion which such dependency bears to total dependency." 820 ILCS 305/8(e)(19) (West 1996).
We find that the clear and unambiguous language of the present version of section 8(e)(19) does not prevent the substitution of parties before arbitration proceedings have commenced. If the General Assembly intended to do such, it easily could have added language requiring arbitration hearings to be complete or at least in progress before substitution is allowed. Instead, the language of section 8(e)(19) plainly allows substitution anytime before the worker has been fully compensated for the injury. 820 ILCS 305/8(e)(19) (West 1996).
Notwithstanding the plain language of the statute, both the legislative history and a Governor's message regarding a related amendment further confirm that substitution is allowed before proceedings have commenced. Senator Knuppel asserted that the purpose of the legislation is to entitle decedent's estate or heirs to receive the benefits that the employee would have otherwise received had the "matter gone to a full and complete hearing." 79th Ill. Gen. Assem., Senate Proceedings, May 21, 1975, at 107. Furthermore, a message by Governor Daniel Walker regarding Senate Bill 473 intimates that the 1975 amendment to section 8(e)(19) (contained in Senate Bill 235) was designed to allow heirs and dependents to pursue a deceased worker's benefits even in circumstances where the worker died before filing for such benefits. 1975 Ill. Laws Governor's message, at 2357-58 (stating that Senate Bill 473 allows heirs and dependents to collect a deceased worker's benefits even though the worker dies before filing for the benefits and *179 that "Senate Bill 473 * * * should be read in a manner which makes it consistent with Senate Bill 235").
Nonetheless, employer urges this court not to read the statute in a manner that permits substitution before proceedings have concluded, fearing that this policy somehow "allows the pursuit of benefits based upon speculation and conjecture as to the probable permanency of a deceased worker's injury." We disagree.
Despite the removal of the requirement that an award be determined before substitution, all claimants, whether substituted parties or not, still must prove permanency by the same burden of proof, namely, by a preponderance of the evidence. Chicago Park District v. Industrial Comm'n, 263 Ill. App.3d 835, 842, 200 Ill.Dec. 431, 635 N.E.2d 770 (1994). Furthermore, workers' compensation provisions allowing substitution before proceedings begin are not uncommon among workers' compensation acts. See 4 A. Larson & L. Larson, Larson's Workers' Compensation Law § 58.44, at 10-492.304 to 10-492.306 (1997). Therefore, we conclude that substitution of claimant in her deceased father's stead was permissible under section 8(e)(19).

C. The Permanency of Decedent's Leg Injury

Employer contends that the evidence was insufficient to prove that decedent suffered from a permanent injury. Specifically, employer argues that when the claim was before the arbitrator, the record showed that decedent had not been released to return to work after his second surgery and that the medical evidence failed to show that his leg injury reached a medically stable plateau.
"A claimant has the burden of proving the extent and permanency of his injury by a preponderance of the evidence; liability cannot be premised upon imagination, speculation or conjecture." Chicago Park District v. Industrial Comm'n, 263 Ill. App.3d 835, 843, 200 Ill.Dec. 431, 635 N.E.2d 770 (1994). Determination of "[t]he extent and permanency of a claimant's disability are question of fact, and the Commission's factual determinations will not be overturned unless they are against the manifest weight of the evidence." Chicago Park District, 263 Ill.App.3d at 843, 200 Ill.Dec. 431, 635 N.E.2d 770.
"It is the province of the Commission to weigh and resolve conflicts in testimony, including medical testimony, and to choose among conflicting inferences therefrom. [Citations.] It is only when the decision of the Commission is without substantial foundation in the evidence or its finding is manifestly against the weight of the evidence that the findings of the Commission should be set aside." Dexheimer v. Industrial Comm'n, 202 Ill.App.3d 437, 442-43, 147 Ill.Dec. 694, 559 N.E.2d 1034 (1990).
When reviewing a decision by the Commission, the court "will assess whether there was sufficient factual evidence in the record to support the decision." Cassens Transport Co. v. Industrial Comm'n, 262 Ill.App.3d 324, 331, 199 Ill.Dec. 353, 633 N.E.2d 1344 (1994). "The test is not whether this or any other tribunal might reach the opposite conclusion, but whether there was sufficient factual evidence in the record to support the Commission's determination." Beattie v. Industrial Comm'n, 276 Ill.App.3d 446, 450, 212 Ill.Dec. 851, 657 N.E.2d 1196 (1995). "A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence." Martin v. Industrial Comm'n, 227 Ill.App.3d 217, 219, 169 Ill.Dec. 228, 591 N.E.2d 108 (1992). For a "`finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent.'" Drogos v. Village of Bensenville, 100 Ill.App.3d 48, 54, 55 Ill.Dec. 902, 426 N.E.2d 1276 (1981), quoting In re Application of County Collector, 59 Ill.App.3d 494, 499, 16 Ill.Dec. 680, 375 N.E.2d 553 (1978).
In this case, claimant presented sufficient testimony and evidence for the Commission to find, by a preponderance of the evidence, that decedent suffered from a permanent leg *180 injury. Decedent's accident caused him to suffer an intertrochanteric fracture requiring surgery and fixation of hardware (consisting of a plate and some screws) into his hip. After the surgery, decedent underwent maximal rehabilitation, but still suffered from pain and irritation. Consequently, on February 4, 1992, decedent underwent a second surgery to remove the hardware. After this surgery, decedent was referred to a physical therapy work hardening program.
Before decedent's second surgery, Dr. Shermer prepared a report of decedent's recovery for State Farm Insurance Company's claim department. He noted in his report that decedent complained that his hip ached during weather changes. Based upon an examination of decedent, Dr. Shermer opined that decedent's left hip still exhibited a 10 degree restriction when flexing, a restriction that Dr. Shermer noted as being mild. Additionally, Dr. Shermer reviewed an X ray of decedent's hip and found that the hip fracture was well healed, but that there was a small calcification at the tip of the greater trochanter. Although Dr. Shermer's report states that decedent had an excellent recovery, he nonetheless concluded that, "[i]n view of [decedent's] excellent response to the surgery and the current clinical findings, as well as the x-ray findings, a mild permanent residual associated with the surgery and subsequent plate fixation[ ] is indicated."
Marie Firtik, decedent's mother, also described decedent's condition after his second surgery. She testified that in June and July of 1992 she noticed that decedent had a bad limp and that decedent seemed to have pain when getting in and out of chairs as well as when he put on his shoes. She also asserted that, during these months, decedent alleviated his pain by consuming pain medication at least once a day.
Based on the above evidence, the Commission found sufficient facts showing that decedent suffered from a permanent injury. Although different inferences could be drawn from the above evidence regarding the permanency of decedent's injury, an opposite conclusion that decedent did not suffer from a permanent injury is not clearly apparent. See Caterpillar Tractor Co. v. Industrial Comm'n, 129 Ill.2d 52, 60, 133 Ill.Dec. 454, 541 N.E.2d 665 (1989) ("It is well settled that if undisputed facts upon any issue permit more than one reasonable inference, the determination of such issues presents a question of fact, and the conclusion of the Commission will not be disturbed on review unless it is contrary to the manifest weight of the evidence"). Not only did Dr. Shermer opine before the second surgery that decedent's left leg had a permanent reduction in flexing ability, but Marie Firtik testified that decedent still exhibited immobility, a limp, and pain despite approximately four months of recovery after the second surgery. Moreover, the severity of decedent's injury and treatment alone creates an inference that a person might never fully recover.
Nonetheless, employer argues that this court should "not allow the Industrial Commission to make a finding that the condition had reached a medically stable plateau or a condition of permanency without [medical] evidence of the post-surgical condition." To support this proposition, employer directs our attention to Deichmiller v. Industrial Comm'n, 147 Ill.App.3d 66, 100 Ill.Dec. 474, 497 N.E.2d 452 (1986). This case only supports employer's contention to the extent it restates the well established rule that speculation cannot be the basis of an award. Deichmiller, 147 Ill.App.3d at 74, 100 Ill.Dec. 474, 497 N.E.2d 452. Although medical evidence establishing permanency collected after decedent's second surgery would have bolstered claimant's case, it was not necessary to support the Commission's determination that decedent suffered from a permanent disability. See Howard v. Industrial Comm'n, 81 Ill.2d 50, 57, 39 Ill.Dec. 771, 405 N.E.2d 750 (1980) (Commission's determination of whether claimant's injury has reached a state of permanency does not necessarily require medical evidence for support). Whether claimant proffered such evidence to the Commission affects the weight and quality of the evidence. Again, it is the province of the Commission to weigh the evidence, and "as long as there is sufficient factual evidence in the record to support the Commission's determination," this court will affirm the Commission's finding. See Beattie, *181 276 Ill.App.3d at 450, 212 Ill.Dec. 851, 657 N.E.2d 1196. Having found that the above evidence sufficiently supports the Commission's determination, we affirm the Commission's decision that decedent suffered from a permanent leg injury.

III. Conclusion
For the foregoing reasons, we affirm the trial court's confirmation of the Industrial Commission's decision.
Affirmed.
McCULLOUGH, P.J., and COLWELL, HOLDRIDGE and RARICK, JJ., concur.