RICHARD BOHANNON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Mestan Plastering, Inc., Appellee).

First District (Industrial Commission Division)   No. 1—92—0410WC

Opinion filed November 20, 1992.

Cohn, Lambert, Ryan & Schneider, Ltd., of Chicago (Stanford L. Lambert, of counsel), for appellant.

Wiedner & McAuliffe, Ltd., of Chicago (James W. Stevenson, Jr., of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant Richard Bohannon sought administrative review of the Industrial Commission's (Commission's) decision in which he was awarded 114²/₇ weeks' temporary total disability (TTD) benefits, $4,355.20 in medical expenses and a wage-differential award of $293.61 per week under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). He contends (1) no maximum limit applies to a wage-differential award pursuant to section 8(d)(1) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(d)(1)) and (2), if a maximum rate does apply to a wage-differential award pursuant to that section of the Act, the proper maximum rate is the maximum TTD rate (see Ill. Rev. Stat. 1985, ch. 48, par. 138.8(b)(1)), here $453.33 per week, rather than the permanent partial disability (PPD) maximum rate (see Ill. Rev. Stat. 1985, ch. 48, pars. 138.8(d)(4), (b)(4)), here $293.61 per week, utilized by the Commission in its decision. We affirm.

Claimant is 49 years old and has been a journeyman carpenter for 15 years. On May 5, 1986, he fell off a scaffold and injured himself. Claimant suffered a fracture of the left lateral tibial plateau with joint effusion, and on May 13, 1986, he underwent surgery where three pins

and a metal screw were placed in his knee to repair the fracture. Claimant filed his application for adjustment of claim on January 21, 1987.

On September 7, 1987, claimant was admitted to Northwestern Community Hospital, where he had a second surgery on his knee. The three pins and the metal screw were removed from claimant's knee. A CT scan was also performed on his back which revealed a small central and left herniation of a disc at level L4-L5.

Claimant began rehabilitation counseling with James Boyd on May 8, 1987. Boyd located a position for claimant at Gemini Display Company as an assembler of fluorescent light fixtures in October 1987. The pay rate for that position was $4.50 an hour. Claimant worked there for one week, but was unable to remain on the job as the pain and numbness in his left leg and back was getting worse. Claimant had one more appointment with Boyd on November 19, 1987, and then ceased contact with him.

Claimant began a job search on his own and on July 26, 1988, secured a position at Thornton Oil Company, a gas station in Franklin Park, Illinois. Claimant was hired as a cashier at $4 an hour, and he worked between 32 and 40 hours per week. However, claimant was laid off from that position because the shift he worked was discontinued. Next, claimant obtained a position at Chelsa Motor Inn in Des Plaines, Illinois, in October 1988. Claimant was employed there as a desk clerk at an hourly rate of $4.25 and worked five days a week, eight hours per day. At the hearing before the Commission on April 13, 1989, claimant was still employed by Chelsa Motor Inn. As of June 1, 1987, the union scale for carpenters was raised from $17 per hour to $19 per hour. As of June 1, 1988, the scale rose to $19.75 per hour, and as of June 1, 1991, the scale was $21 per hour.

On November 30, 1988, the arbitrator issued a decision finding claimant was temporarily totally disabled for a period of 75$6/7$ weeks and was entitled to $453.33 per week for that period. The arbitrator further found claimant was entitled to the sum of $293.61 a week for a further period of 250 weeks pursuant to section 8(d)(2) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(d)(2)) because the injury sustained caused the complete and permanent disability equal to 50% loss of the man as a whole.

Respondent filed a petition for review before the Commission, which affirmed and modified the arbitrator's decision. The Commission found claimant was temporarily totally disabled from May 6, 1986, to July 26, 1988, when he obtained employment as a gas station cashier, minus the one week between October 19, 1987, and October 26, 1987, when claimant was employed by Gemini Display Company. The Commission further

found claimant should be compensated under section 8(d)(1) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(d)(1)) because, as a result of his accidental injuries, he was incapacitated from pursuing his usual and customary line of employment as a journeyman carpenter. The Commission found claimant was entitled to receive a sum equal to 66⅔% of the difference between the average amount he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount he is earning or able to earn in some suitable employment after the accident. However, the Commission concluded this sum was limited to the maximum weekly compensation rate which, pursuant to the Act, was $293.61.

The Commission further concluded that for the 11³/₇-week period between July 26, 1988, and October 14, 1988, claimant earned $160 per week as a cashier. As a journeyman carpenter, he could have earned $790 per week. Sixty-six and two-thirds percent of the difference was $420, but as that sum was subject to the maximum rate (see Ill. Rev. Stat. 1985, ch. 48, par. 138.8(b)(4)), claimant was only entitled to $293.61 per week for that period. Likewise, between October 15, 1988, and the date of the review hearing, the claimant earned $170 per week at the Chelsa Motor Inn. As a journeyman carpenter he could have earned $840 per week. Sixty-six and two-thirds percent of the difference was $446.67 but again, that sum was limited to $293.61 per week for that period.

Accordingly, claimant was ordered to receive $453.33 a week for a period of 114²/₇ weeks, that being the period of temporary total incapacity to work under section 8(b)(1) of the Act. Claimant was further ordered to receive $293.61 for a period of 37³/₇ weeks and, thereafter, a sum not to exceed $293.61 per week, or 66⅔% of the difference between the amount he would be able to earn in the full performance of his duties in the occupation he was engaged in at the time of the accident and the average amount he is earning or is able to earn in some suitable employment after the accident pursuant to section 8(d)(1) of the Act, subject to the limitations of section 8(b) of the Act.

Claimant sought administrative review of the Commission's decision, and on January 23, 1992, the circuit court issued its opinion confirming the decision of the Commission. This appeal followed.

■ Claimant first contends that no maximum limit should apply to a wage-differential award pursuant to section 8(d)(1) of the Act. He asserts the legislative intent of that section, its wording, and public policy consideration support his proposition.

Section 8(d)(1) of the Act provides, in pertinent part:

"If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in cases compensated under the specific schedule set forth in paragraph (e) of this Section, receive compensation for the duration of his disability, *subject to the limitations as to maximum amounts fixed in paragraph (b) of this Section*, equal to 66⅔% of the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(d)(1).)

(Subsection (e) of this section refers to the loss or use of loss of various body parts which does not apply to claimant.) By the very terms of this section, there are maximum limits of recovery. Moreover, this court has expressly recognized that there are maximum limits on awards under this section. In *General Electric Co. v. Industrial Comm'n* (1986), 144 Ill. App. 3d 1003, 1015, 495 N.E.2d 68, 76, this court stated: "We recognize that section 8(d)(1) wage-differential awards are subject to the limitations as to maximum amounts fixed in section 8(b)." This court further stated:

"After reviewing the provisions of section 8(b), we conclude that the limitations as to maximum amounts of wage-differential awards referred to in section 8(d)(1) are set forth in sections 8(b)(4) and 8(b)(5) [citation]." (*General Electric*, 144 Ill. App. 3d at 1017, 495 N.E.2d at 77.)

Accordingly, the specific wording of section 8(d)(1) of the Act and this court's decision in *General Electric* require rejection of claimant's argument that no maximum limitations apply to wage-differential awards.

■ Next, claimant contends that if a maximum rate applies to wage-differential awards, the proper maximum rate is the TTD rate rather than the PPD rate. As previously noted, this court has determined that section 8(b)(4) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(b)(4)) sets forth the maximum limits applicable to wage-differential awards. That section provides:

"All weekly compensation rates provided under subparagraphs 1, 2 and 2.1 of this paragraph (b) of this Section shall be subject to the following limitations:
***

The maximum weekly compensation rate, for the period July 1, 1984, through June 30, 1987, except as hereinafter provided, shall be $293.61." (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(b)(4).) The second sentence of the third paragraph of section 8(b)(4) provides that after July 1, 1987, and every July 1 thereafter, if during the preceding 12-month period there shall have been an increase in the State's average weekly wage in covered industries under the Unemployment Insurance Act (Ill. Rev. Stat. 1989, ch. 48, par. 300 *et seq.*), the weekly compensation rate shall be proportionately increased by the same percentage as the percentage of increase in the State's average weekly wage in covered industries under that during such period. The date of injury, here May 5, 1986, controls the maximum rate applicable, and claimant does not argue that the second sentence of this third paragraph, rather than the first, governs his maximum weekly compensation rate.

The primary rule of statutory construction is to ascertain and effectuate the legislature's intent; in doing so, a court looks first to the statutory language itself; if the language is clear, the court must give it effect and should not look to extrinsic aids for construction. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277, 469 N.E.2d 167, 171.) Words used in a statute are to be given their plain and commonly understood meaning in the absence of an indication of legislative intent to the contrary. (*In re Petition to Annex Certain Territory* (1991), 144 Ill. 2d 353, 362, 579 N.E.2d 880, 884.) Where the language of statutory provisions is clear, the court must give it effect. *West v. Kirkham* (1992), 147 Ill. 2d 1, 6, 588 N.E.2d 1104, 1106.

Claimant's argument that the TTD rate rather than PPD rate should apply is without merit. The proper maximum rates in determining permanent disability benefits are found in section 8(b)(4) of the Act. That section, which controls a section 8(d)(1) award, clearly specifies that the maximum weekly compensation rate shall be $293.61.

Moreover, the legislative history of this section evidences an intent to place a maximum limit on wage-differential awards. In discussing House Bill 2373, which added the quoted language to section 8(b)(4) of the Act (Pub. Act 83—1125, eff. June 30, 1984 (1984 Ill. Laws 212, 219)), Senator Lechowicz stated, "I believe it...in the amendment [House Bill 2373], it provides for the weekly compensation rates for a period from July 1 of 1984 through June 30th, 1987. Does that mean we're going to have a cap on weekly benefits of two hundred ninety-three dollars and sixty-one cents for that period of time?" (83d Ill. Gen. Assem., Senate Proceedings, June 30, 1984, at 87 (statements of Senator Lechowicz).) In response, Senator Sangmeister replied, "Yes. *** What we're

doing is continuing the freeze that is presently in effect at the [$]293.61 rate and we would freeze that for another three years." (83rd Ill. Gen. Assem., Senate Proceedings, June 30, 1984, at 87 (statements of Senator Sangmeister).) With respect to this bill, Senator McPike stated it "freezes, once again, for three years the rate on permanent partial disabilities. As you will recall, we froze those rates for three years. That freeze came off in January of '84. This reimposes the freeze beginning tomorrow for three years." (83d Ill. Gen. Assem., House Proceedings, June 30, 1984, at 149 (statements of Representative McPike).) Similarly, Senator Collins indicated it "freezes permanent/partial benefits until June 30th, 1987." (83d Ill. Gen. Assem., Senate Proceedings, June 30, 1984, at 83 (statements of Senator Collins).) Thus, these statements establish that the legislature intended a cap or freeze on such wage-differential awards.

■ The Commission concluded that for the 11$^3$/7-week period between July 6, 1988, and October 14, 1988, claimant was entitled to $420 per week, which is 66 $^2$/3% of the difference between what he earned as a cashier and what he could have earned as a journeyman carpenter. However, the Commission found that amount was limited to $293.61 pursuant to section 8(b) of the Act. Likewise, between October 15, 1988, and the date of the hearing, the Commission concluded claimant was entitled to $446 per week, representing 66$^2$/3% of the difference between what he earned at the Chelsa Motor Inn and what he could have earned as a journeyman carpenter. Again, however, the Commission found the amount of the award was limited by section 8(b)(4) of the Act to $293.61. Hence, since the statute is clear upon setting the maximum limit, claimant's argument is without merit, and the Commission properly found the weekly compensation rate was limited to $293.61.

For the foregoing reasons, the circuit court's judgment confirming the Commission's decision limiting claimant's wage-differential award is affirmed.

Affirmed.

RAKOWSKI, WOODWARD, STOUDER, and H. LEWIS, JJ., concur.