BILLIE V. FERNANDES, d/b/a Fernandes Construction Company, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Jack Ponthieux, Appellee).

Fourth District (Industrial Commission Division)   No. 4—92—0418WC

Argued March 3, 1993.—Opinion filed June 10, 1993.—Rehearing denied July 29, 1993.

Jeremy H. Heiple (argued), of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellant.

Diane E. Greanias (argued), of Peoria Heights, and Warren E. Danz, P.C., of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The appellee, Jack Ponthieux (the claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) for injuries sustained in the employ of the appellant, Billie V. Fernandes, d/b/a Fernandes Construction Company (the employer). Following a hearing, the arbitrator found, *inter alia*, that the claimant had sustained permanent partial disability (PPD) to the extent of 30% loss of the use of his left hand and awarded benefits under section 8(e) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.8(e)). On review, the Industrial Commission (the Commission), with one commissioner dissenting, modified the arbitrator's decision to award benefits under section 8(d)(1) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.8(d)(1)) rather than section 8(e). The circuit court of Morgan County confirmed. The employer brings the instant appeal.

In September of 1987, the claimant, Jack Ponthieux, was employed as a structural ironworker on a building project in Jacksonville, Illinois, by the employer, Fernandes Construction Company. The claimant resided in Louisiana, and had been sent to the Illinois project by his union. On September 9, 1987, while working on the roof of the project, the claimant tripped on a welding cable and fell from the roof. The claimant landed on his left arm and hand. The claimant was taken to a local Jacksonville hospital emergency room for treatment and, subsequently, transferred to Louisiana for further treatment. The record shows the claimant suffered a left wrist fracture dislocation, three fractured ribs, and multiple contusions.

On returning to Louisiana, the claimant came under the care of Dr. Robert Chuinard. Chuinard performed surgery on the left wrist on September 22, 1987. Thereafter, the claimant was treated through physical therapy and other forms of rehabilitation for approximately a year. On December 8, 1988, Chuinard released the claimant from his care. Chuinard was of the opinion the claimant would not benefit from

any further medical treatment. Chuinard opined the claimant could not return to his occupation as an ironworker. According to Chuinard, the claimant sustained a permanent partial impairment of his left wrist and hand.

During this time efforts were also made to bring the claimant back into the work force. The claimant testified at arbitration that he told the rehabilitation specialist that he wished to attend truck driving school. Some efforts were made in this direction. He applied for some truck driving jobs, though he was turned down. The claimant testified these jobs paid between $9 and $12 per hour. The specialist located possible positions, including truck driving that paid between $4 and $9 per hour. On September 1, 1989, the claimant began working for Wells Fargo Guard Service as a security guard. He testified he was paid $4.30 per hour.

The claimant testified he had been an ironworker for 30 years. However, prior to that the claimant had worked for a time as a seaman and then a truck driver. At the time of his injury he was paid $16.75 per hour. He had a high school education. The record shows the claimant was 54 at the time of his injury. He was also left-handed.

The record shows that in October of 1988, the employer's workers' compensation carrier inadvertently sent a check for $26,800.20 to the claimant for temporary total disability. The check was supposed to be in the amount of $893.34. In April 1989, the employer filed a motion seeking reimbursement for the overpayment. The arbitrator entered an order reflecting the overpayment and suspended payments to the claimant until such time as the employer might owe in excess of the amount of overpayment.

A hearing before the arbitrator was held on December 6, 1989. In the written decision, the arbitrator found the claimant had suffered accidental injuries arising out of and in the course of his employment. Among other things, the arbitrator found the claimant was entitled to $299.15 per week for 57 weeks pursuant to section 8(e) of the Act representing a 30% loss of the use of his left hand. The arbitrator found the claimant had failed to carry his burden of proof regarding a wage-loss-differential award under section 8(d)(1) of the Act. The arbitrator found the record showed the claimant could drive a truck. The arbitrator concluded the condition of claimant's left hand was not the reason for his not obtaining a truck driving job. The arbitrator found arrangements for the claimant's attendance in truck driving school were made after the arbitrator's order suspending payment of benefits by the employer. Therefore, the employer acted reasonably in not paying for the training.

The claimant sought review before the Commission. On June 14, 1991, with one commissioner dissenting, the Commission entered its decision. In pertinent part, the Commission concluded that the claimant was permanently incapacitated to the extent that he could not pursue his usual employment as an ironworker. The Commission found the claimant had sought vocational training, which the employer did not pay for. The claimant actively sought employment within his medical restrictions. The Commission found the claimant's wage as a security guard fell within the range for jobs found by the rehabilitation specialist and that the job constituted suitable employment under section 8(d)(1) of the Act.

The Commission noted the record did not show what the claimant would have been able to earn as a ironworker after his injury. However, the record did show the claimant's earnings prior to September 9, 1987. Based on the evidence in the record, the Commission calculated the claimant's wage-loss differential to be $332 per week.

Although agreeing on the award of a wage differential, the commissioners disagreed as to what, if any, maximum limit was placed on such awards. The majority noted that section 8(d)(1) refers to the limits found in section 8(b) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.8(b)). However, the language of section 8(b) is unclear as to which limits found in that section apply to a section 8(d)(1) award. After analyzing the statute and case law, the majority concluded the maximum rate for PPD awards was not also the maximum rate for awards under section 8(d)(1).

One commissioner dissented, finding the award exceeded the rate provided by statute. The dissenting commissioner believed an award under section 8(d)(1) was a PPD award and subject to the same limits. Thus, he was of the opinion the claimant's award was limited to $299.15 per week.

The circuit court confirmed and the employer appeals.

The employer argues the Commission's award of a wage differential pursuant to section 8(d)(1) is contrary to the law and against the manifest weight of the evidence.

The employer contends the Commission erred in using the claimant's wage at the time of his injury in calculating the wage-loss differential. The employer argues the statute and the case law require the use of the wage the claimant might have been earning as of the date of the arbitration hearing had he still been employed in the occupation engaged in at the time of the injury. The employer maintains the burden was on the claimant to present such evidence. No such evidence was presented, and thus the employer argues the claimant was not

entitled to an award under section 8(d)(1). In reply, the claimant argues the Commission could reasonably infer that his potential earnings as an ironworker, as of the date of the arbitration hearing, would be the same as at the time of his injury.

■ A review of the cases in regard to the first issue raised by the employer shows the court has found it was proper for the Commission to use a figure reflecting what the claimant would have earned at the time of the hearing had the claimant still been in the position he occupied at the time of his injury.

In *General Electric Co. v. Industrial Comm'n* (1986), 144 Ill. App. 3d 1003, 495 N.E.2d 68, the claimant was injured on December 6, 1978, at which time the claimant held a job classification of R10, earning $232.80 per week. After being off work for a period of time, attempting to return to work, and then being off work again, the claimant worked for a nine-month period in 1981, in the job classification R2. The record showed that at the time of the hearing before the Commission, R10 employees were earning $356 per week and R2 employees were earning $339.40 per week. Also at the time of the hearing before the Commission, the claimant testified she was earning $93.64 per week as a waitress.

The Commission awarded a section 8(d)(1) wage differential based on 66⅔% of the difference between the amount the claimant would have earned as an R10 employee at the time of the hearing before the Commission and the amount she earned as a waitress. On appeal, General Electric challenged the Commission's use of the amount the claimant would have earned at the time of the hearing before it as an R10 employee rather than the amount she earned as an R10 employee at the time of her injury.

This court reviewed the statutory history of section 8(d)(1), noting that prior to amendments effective July 1, 1975, the statute referred to the use of the average amount earned "before the accident." (See Ill. Rev. Stat. 1973, ch. 48, par. 138.8(d).) Thereafter, the statute referred to the average amount which the claimant "would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident." (See Ill. Rev. Stat. 1987, ch. 48, par. 138.8(d)(1).) This court stated, "[T]he language of section 8(d)(1) after the 1975 amendment indicates that the Commission should calculate wage-differential awards based on the amount that a claimant 'would be able to earn' at the time of the hearing if the claimant were able to fully perform the duties of the occupation in which he was engaged at the time of the accident." (*General Electric,* 144 Ill. App. 3d at 1014, 495 N.E.2d at 75.) This court found the em-

ployer presented no evidence the claimant would not still have been an R10 employee absent her injury.

The court went on to explain that use of this figure in calculating the differential provided a more realistic indication of the diminution in earning capacity.

In *Deichmiller v. Industrial Comm'n* (1986), 147 Ill. App. 3d 66, 497 N.E.2d 452, the claimant was working as a temporary union journeyman plumber at the time he was injured in April 1980. At the time, he was earning approximately $9 or $9.25 per hour. The claimant was yet to take an examination which would allow him to be a full union journeyman plumber. Testimony before the arbitrator on December 4, 1981, indicated a journeyman plumber earned $16.20 per hour. Subsequently, the claimant submitted into evidence a schedule of wage rates in effect from January 1, 1979, to May 31, 1982. On September 16, 1981, the claimant obtained a job as a sales representative paying $325 per week.

The arbitrator awarded the claimant benefits pursuant to section 8(d)(1) based on the difference between the average amount he would have been able to earn as a union journeyman plumber and the average amount he actually earned as a sales representative.

Before the Commission, the claimant testified he had left his employment as a sales representative. He testified he was currently employed as a car salesman making an average of $284.89 per week. In pertinent part the Commission determined it would be mere speculation to assume the claimant would have become a union journeyman plumber. Therefore, the Commission utilized the amount the claimant would have earned as a fourth-year apprentice plumber in making its section 8(d)(1) calculations.

On appeal, this court held the Commission correctly refused to assume the claimant would have been a union journeyman plumber. Citing *General Electric*, this court stated the evidence in the record did not permit the Commission to infer the claimant's occupation at the time of his injury was that of a permanent union journeyman plumber. The court also held the Commission did not err in using the earnings of fourth-year apprentices in calculating the differential. The record showed the claimant had worked as a plumber for approximately 4½ years prior to his accident.

The court noted there was no evidence in the record as to the earnings of a fourth-year apprentice plumber between May 31, 1982, and the date of the hearing before the Commission on November 29, 1982. Neither party had attempted to introduce evidence in this regard. The court held the Commission properly refrained from specu-

lating on possible increases and used the wage rate as of May 31, 1982, rather than the date of the hearing.

■ In the instant case, the only evidence regarding the claimant's earnings as an ironworker was his wage on the date of his injury in September 1987. There was no attempt by either party to update this figure. We find it was within the Commission's discretion to use this figure, and not speculate on any possible change in wage rates between the date of the injury and the Commission's award. In *Deichmiller*, this court held the Commission properly inferred the average amount based on what the wage was some six months earlier. In sum, we find no error in the use of the average wage as of the date of injury when that is the only evidence in the record.

■ Without citation to authority, the employer contends the Commission erred in utilizing the claimant's wage as a security guard in calculating the wage-loss differential. The employer maintains the Commission should have used the figure the claimant testified he could have made as a truck driver.

Under section 8(d)(1) of the Act, the Commission, in making its calculation, is to look to the amount the claimant "is earning or is able to earn in some suitable employment or business after the accident." (Ill. Rev. Stat. 1987, ch. 48, par. 138.8(d)(1).) In the instant case, the Commission specifically found that the claimant's employment as a security guard was suitable employment within his capabilities and work restrictions. The rate of pay fell within the range of pay for jobs located by the rehabilitation specialist. On these facts, we find this determination is neither against the manifest weight of the evidence nor an abuse of discretion. As in *Deichmiller*, the Commission properly refrained from speculating as to the claimant's possible earnings in a theoretical position.

■ Again without citation to authority, the employer argues the arbitrator's decision to award benefits under section 8(e) rather than section 8(d)(1) was proper and should be reinstated. The employer argues the arbitrator recognized the claimant's proof problem regarding earnings. The employer contends the 30% loss of the use of the claimant's hand was supported by the findings of Dr. Chuinard.

The Commission exercises original jurisdiction and is in no way bound by the arbitrator's decision. *Dillon v. Industrial Comm'n* (1990), 195 Ill. App. 3d 599, 552 N.E.2d 1082.

As stated above, we find no error in utilizing the claimant's wage as of the date of his injury to determine the wage-differential award under section 8(d)(1). It was within the discretion and authority of the Commission to award a wage differential under section 8(d)(1), rather

than a scheduled loss under section 8(e). We see no reason to disturb this decision.

■ The Commission awarded the claimant a wage-loss differential of $332 per week for the duration of his disability. The employer argues the Commission majority erred in failing to limit the wage-loss differential as provided by statute. The employer argues this court has held that section 8(d)(1) awards are subject to the limits found in sections 8(b)(4) and (b)(5) of the Act (Ill. Rev. Stat. 1987, ch. 48, pars. 138.8(b)(4), (b)(5)). (See *General Electric*, 144 Ill. App. 3d 1003, 495 N.E.2d 68.) Pursuant to these limits, the employer argues the loss differential should have been limited to $299.15.

The claimant agrees there is a maximum limit to section 8(d)(1) awards; however, he argues it is not $299.15. The claimant argues the statutory maximum rate is the rate in effect at the time of the award. The claimant also raises, apparently for the first time on appeal, the contention that the Commission has been erroneously calculating the statutory maximum rate since 1987. The claimant argues under a "correct" calculation, his award in this case did not exceed the statutory maximum. The claimant presents an extensive argument with numerous, complex calculations in support of this argument.

We find the claimant's argument on the erroneous calculation issue waived because he did not raise the issue in the circuit court. See *May v. Industrial Comm'n* (1990), 195 Ill. App. 3d 468, 552 N.E.2d 258.

Section 8(d)(1) of the Act provides that compensation awarded under this section is "subject to the limitations as to maximum amounts fixed in paragraph (b) of this Section" (Ill. Rev. Stat. 1987, ch. 48, par. 138.8(d)(1)).

In *General Electric*, General Electric, like the instant employer, maintained the weekly loss differential awarded under section 8(d)(1) exceeded the maximum weekly compensation rate contained in section 8(b). This court stated that the maximum amount which can be awarded as a wage differential is determined by reference to sections 8(b)(4) and (b)(5) of the Act.

In the instant case, the majority of the Commission held that an award under section 8(d)(1) is grounded on a loss-of-wages theory. This contrasts with the other provisions for PPD (sections 8(c), (d)(2), and 8(e)), which are limited by a schedule and to a fixed number of weeks. (See Ill. Rev. Stat. 1987, ch. 48, pars. 138.8(c), (d)(2), (e).) The majority stated that while section 8(d)(1) refers to the limits found in section 8(b), the language of section 8(b) is ambiguous as to which limit found therein applies. The majority found that section 8(b)(4)

sets the maximum weekly compensation rates for awards of temporary total disability (section 8(b)), permanent total disability (section 8(f)), and disfigurement (section 8(c)). (See Ill. Rev. Stat. 1987, ch. 48, pars. 138.8(b), (f), (c).) The majority found that sections 8(b)(1), (b)(2) and (b)(2.1) (Ill. Rev. Stat. 1987, ch. 48, pars. 138.8(b)(1), (b)(2), (b)(2.1)), alluded to in section 8(b)(4), did not make reference to section 8(d)(1). The majority held it did not read section 8(b) as limiting the claimant's award to the maximum amount allowed for PPD. The majority concluded it was not holding there were no limits to section 8(d)(1) awards, only that the PPD maximum was not that limit.

The dissenting commissioner opined the maximum rate found in section 8(b)(4) applied and limited the claimant's weekly wage-loss differential to $299.15.

In looking at section 8(b), sections 8(b)(1) and (b)(2.1) are concerned with calculating and setting minimum rates for temporary total disability and compensation rates for awards under sections 8(c), (d)(2) and (e) of the Act. Section 8(b)(2) covers compensation in all cases other than those covered by sections 8(b)(1) and (b)(2.1); that is, sections 8(d)(1) and 8(f). Section 8(b)(4) establishes the maximum weekly compensation payable under awards referred to in sections 8(b)(1), (b)(2) and (b)(2.1). Therefore, as stated in *General Electric*, we find the maximum rate contained in section 8(b)(4) applies to section 8(d)(1) awards. The Commission majority erred in finding the limitations set forth in section 8(b)(4) did not apply to the claimant's award.

Thus, we find the cause should be remanded for further proceedings to determine whether the claimant's wage-loss-differential award exceeded the statutory limits.

For the foregoing reasons, we affirm the judgment of the circuit court of Morgan County awarding the claimant a wage-loss differential; however, we reverse and remand the cause to the Commission for a determination of whether that award exceeded the statutory limits set forth in section 8(b)(4).

Affirmed in part; reversed in part and remanded.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and RARICK, JJ., concur.