FOREST CITY ERECTORS, Appellant and Cross-Appellee, v. THE INDUS-TRIAL COMMISSION *et al.* (Daniel W. Wajerski, Appellee and Cross-Appellant).

First District (Industrial Commission Division)    No. 1—93—1171WC

Opinion filed June 3, 1994.

RARICK, J., specially concurring.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, Patrick J. Cadigan, and Bruce L. Carmen, of counsel), for appellant.

Asher, Gittler, Greenfield, Cohen & D'Alba, Ltd. (Joel A. D'Alba and Stephen Feinberg, of counsel), and Anesi, Ozmon & Rodin, Ltd. (Arnold G. Rubin and David Figlioli, of counsel), both of Chicago, for appellee.

JUSTICE SLATER delivered the opinion of the court:

The claimant, Daniel W. Wajerski, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.*). Claimant sought to recover benefits for an injury he sustained while working as an ironworker for the employer, Forest City Steel Erectors.

The arbitrator found that the claimant's injury arose out of and in the course of his employment and that as a result of the injury he was temporarily totally disabled for $80^5/7$ weeks. The arbitrator also found that the claimant was permanently incapacitated from pursuing the occupation he was engaged in at the time of the injury and awarded him $380.53 per week for the duration of his disability pursuant to section 8(d)(1) of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 138.8(d)(1)). The Industrial Commission (the Commission) affirmed the arbitrator's decision but modified the amount awarded to $313.51 per week. The circuit court confirmed the Commission's decision. The employer now appeals and the claimant cross-appeals. We affirm.

The record shows that the claimant was hired by the employer in September of 1988 to work as a journeyman ironworker. In November claimant was promoted to foreman. Claimant earned $19.27 per hour while working as an ironworker and an additional $1 per hour while working as a foreman. During the 14-week period that claimant worked for the employer prior to his injury, he worked an average of 44.7 hours per week, and his average weekly wage was $807.70. On December 27, 1988, claimant slipped and fell while walking down a ramp at a jobsite, fracturing his left ankle. There is no dispute that, as a result of his injury, the claimant is unable to perform his regular duties as an ironworker.

Two witnesses testified at arbitration regarding the amount of work available to ironworkers. Frank Pauley, secretary-treasurer of local number one of the Iron Workers' Union, testified that a normal work week for a journeyman ironworker is 40 hours of work. According to Pauley, the job of an ironworker is full-time, not seasonal, work and ironworkers can work 52 weeks per year. Franklin Miezio, who had worked as a foreman for the employer, testified that claimant questioned him in October of 1988 regarding

the amount of work available and whether he would be kept on the job. Miezio told claimant that the employer had "10 months to a year's work" available. Miezio also signed a letter at claimant's request indicating that the employer had work available for at least one year and that Miezio had requested that claimant remain employed for that period.

In addition to the testimony related above, a document entitled "Employee Pension History File List" was admitted into evidence. According to Pauley, the document was prepared by the pension fund office of the union and it shows the years in which the claimant worked as an ironworker and the number of hours worked in those years. That information is summarized as follows:

| Year | Hours |
|------|-------|
| 1971 | 1,057.00 |
| 1972 | 1,826.00 |
| 1973 | 1,880.00 |
| 1974 | 1,975.00 |
| 1975 | 1,594.00 |
| 1976 | 781.00 |
| 1977 | 710.00 |
| 1978 | ——— |
| 1979 | 1,230.00 |
| 1980 | 503.00 |
| 1981 | 857.00 |
| 1982 | 887.00 |
| 1983 | 43.00 |
| 1984 | 490.50 |
| 1985 | 549.00 |
| 1986 | 1,580.00 |
| 1987 | 1,046.50 |
| 1988 | 1,240.00. |

As a result of his inability to return to work as an ironworker, claimant's employer arranged for job counseling and he sought other work. In July of 1990 claimant began working as a "pole man" on a surveying crew, earning $6 per hour. Claimant was still engaged in this occupation at the time of the arbitration hearing.

The arbitrator, in addition to awarding temporary total disability benefits, which are not at issue here, found that the claimant was entitled to a wage differential award under section 8(d)(1) (Ill. Rev. Stat. 1991, ch. 48, par. 138.8(d)(1)). The arbitrator awarded the sum of $380.53, which represented 66²/₃% of the difference between the

amount claimant would have been able to earn as an ironworker ($20.27 per hour x 40 hours per week $810.80) and the amount he was earning as a "pole man" ($240).

On review, the Commission modified the amount of the award of section 8(d)(1) benefits to $313.51 per week. The Commission found that section 8(d)(1) awards are subject to the same maximum limitation as permanent partial disability awards under section 8(b)(4). As noted above, the circuit court confirmed the Commission's decision.

The employer raises two issues on appeal. First, it contends that the Commission erred in awarding section 8(d)(1) wage differential benefits without considering the claimant's prior work and earnings history. Employer notes that claimant's pension records establish that in 17 years as an ironworker he worked an average of 1,073.40 hours per year, and he was therefore only a part-time ironworker. Employer argues that to allow a section 8(d)(1) award to be based upon an assumption that claimant would work full time creates a windfall for claimant and, in Professor Larson's words, "turn[s] a part-time able-bodied worker into a full-time disabled worker" (2 A. Larson, Law of Workmen's Compensation § 60.21(d), at 10—707 (1992)). We disagree.

■ Section 8(d)(1) provides:

"If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in cases compensated under the specific schedule set forth in paragraph (e) of this Section, receive compensation for the duration of his disability, subject to the limitations as to maximum amounts fixed in paragraph (b) of this Section, equal to 66²/₃% of the difference between the average amount which he would be able to earn *in the full performance of his duties in the occupation in which he was engaged* at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 48, par. 138.8(d)(1).

Words used in a statute are to be given their plain and commonly understood meaning (*Bohannon v. Industrial Comm'n* (1992), 237 Ill. App. 3d 989, 606 N.E.2d 527), and where the language of a statute is clear and unambiguous, the courts are obligated to enforce the law as enacted by the legislature (see *Illinois-Iowa Blacktop, Inc. v. Industrial Comm'n* (1989), 180 Ill. App. 3d 885, 536 N.E.2d 1008). The language emphasized above clearly evidences the legislature's intent that section 8(d)(1) awards are to be based on the number of hours

constituting "full performance" of a particular occupation. Based on the facts of this case, we conclude that this claimant has demonstrated "full performance" of the duties of his occupation.

■ We also note that the interpretation of section 8(d)(1) advocated by the employer would, in effect, repeal Public Act 79—79 (Pub. Act 79—79, eff. July 1, 1975), which amended section 8(d)(1). Prior to amendment, section 8(d)(1) provided for wage differential benefits based on the "difference between *the average amount which [claimant] earned before the accident"* and the average amount he is earning after the accident. (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(d)(1).) Public Act 79—79 replaced the language emphasized above with the current language referring to full performance of the claimant's occupational duties. Changes in wording and phrasing are presumed to have been deliberately made (*In re Marriage of Sutton* (1990), 136 Ill. 2d 441, 557 N.E.2d 869), and when the legislature amends an act by deleting certain language, it is presumed that the legislature intended to change the law in that respect (*In re Summary Suspension of Driver's License of Rakers* (1989), 187 Ill. App. 3d 27, 542 N.E.2d 1311; *Smith v. Industrial Comm'n* (1988), 170 Ill. App. 3d 626, 525 N.E.2d 81).

This court must give effect to the amended law in a manner consistent with the amendment. (*General Electric Co. v. Industrial Comm'n* (1986), 144 Ill. App. 3d 1003, 495 N.E.2d 68.) Accordingly, we find that it was proper for the Commission to calculate the section 8(d)(1) benefits without regard to claimant's earnings prior to the accident.

Finally, we note that our decision here is consistent with previous decisions construing section 8(d)(1). In *Old Ben Coal Co. v. Industrial Comm'n* (1990), 198 Ill. App. 3d 485, 555 N.E.2d 1201, the claimant, a "grade 5" employee, was injured in two separate incidents. Claimant returned to work after the first injury at a different job classification and lower rate of pay because there had been a general layoff. After claimant sustained his second injury, the parties stipulated that his average earnings during the year preceding his injury had been $429.08 per week as calculated pursuant to section 10 of the Act (see Ill. Rev. Stat. 1991, ch. 48, par. 138.10). Claimant was subsequently awarded wage differential benefits based upon what he would have earned as a grade 5 employee ($117.72 per day), rather than on his actual earnings the previous year. On appeal, the employer argued that the award should have been based on the amount of stipulated prior earnings because the claimant had not established that he was capable of earning more than the stipulated amount. The employer also contended that the award was speculative, because it did not

take into account days off from work due to sickness, injury, absenteeism, layoffs or strikes. In response, the court stated:

"[T]he statute provides that a wage differential should be calculated on the presumption that but for the injury, the employee would be in the full performance of his duties. Accordingly, we hold that the Commission properly elected to compute the wage differential award based in part on the petitioner's classification at the time of the original injury, *rather than on the stipulated amount that he had actually earned.*" (Emphasis added.) *Old Ben Coal*, 198 Ill. App. 3d at 493, 555 N.E.2d at 1207.

See also *General Electric*, 144 Ill. App. 3d 1003, 495 N.E.2d 68.

■ The employer next contends that the Commission erred in failing to consider the fact that the claimant's wages as a "pole man" may increase each year. Specifically, employer contends that since the claimant's wages could increase each year, the wage differential would automatically decrease and, as such, the Commission should have taken this fact into account when it calculated the award.

It is axiomatic that liability under the Act cannot be premised on speculation or conjecture but must be based solely on the facts contained in the record. Similarly, an award for loss of earnings cannot be based on speculation as to the particular employment level or job classification which a claimant might eventually attain. See *Deichmiller v. Industrial Comm'n* (1986), 147 Ill. App. 3d 66, 497 N.E.2d 452.

In this case, we note that on cross-examination of claimant, the employer asked claimant if he had discussed raises with his employer. This line of questioning was objected to as hearsay, as well as being speculative. The arbitrator sustained the objection and employer made an offer of proof indicating that the claimant would testify that his new employer told him that he would receive a raise of $3 per hour after each of his first three years on the job.

Any testimony by the claimant recounting what his employer told him would clearly be hearsay and was therefore inadmissible. (See *In re Estate of Holmgren* (1992), 237 Ill. App. 3d 839, 604 N.E.2d 1092.) Furthermore, whether claimant's salary would in fact increase is highly speculative, since any number of circumstances may prevent such an occurrence. We also note that while the employer is barred from bringing a new action should the claimant's wages increase, the claimant is also barred from bringing an action should his wages decrease. (See *Petrie v. Industrial Comm'n* (1987), 160 Ill. App. 3d 165, 513 N.E.2d 104.) Thus, both the claimant and the employer equally share the risk of changes in the claimant's income. As such, we find that the Commission properly declined to speculate that a wage increase would occur.

■ We now consider the issue raised by the claimant in his cross-appeal. The claimant argues that the Commission erred in reducing his wage differential award. Specifically, claimant maintains that benefits awarded under section 8(d)(1) should not be subject to the same maximum amount limitation as that applied to permanent partial disability awards under section 8(b)(4). Claimant contends that the maximum benefit award under section 8(d)(1) should be 100% of the State's average weekly wage. On the other hand, the Illinois State Federation of Labor and Congress of Industrial Organizations, in its brief as *amicus curiae*, argues that the maximum rate should be 133¹/₃% of the State's average weekly wage.

We note, and the claimant concedes, that this issue has recently been addressed by this court in both *Bohannon v. Industrial Comm'n* (1992), 237 Ill. App. 3d 989, 606 N.E.2d 527, and *Fernandes v. Industrial Comm'n* (1993), 246 Ill. App. 3d 261, 615 N.E.2d 1191. We decline the invitation to reconsider those decisions and we find that the Commission did not err in limiting the claimant's wage differential award pursuant to section 8(b)(4).

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI and WOODWARD, JJ., concur.

JUSTICE RARICK, specially concurring:
While I am in agreement with the majority's resolution of the two issues raised by the employer in the present appeal, I feel compelled to write separately. The language of section 8(d)(1) clearly demonstrates that awards thereunder are to be based on the number of hours constituting "full performance" of claimant's occupation, and that an individual claimant's work history is not determinative of what constitutes full performance on a case-by-case basis. With respect to the employer's argument that claimant's wages might increase each year, there is no proper evidence of this in the record. I also agree with the majority's resolution of the issue raised by the claimant in his cross-appeal, but with great reluctance because, as the Illinois State Federation of Labor and Congress of Industrial Organizations (ISFL) points out in its brief *amicus curiae*, the law as presently drafted and interpreted could result in a monumental loss of earning potential for certain workers and in economic ruin for the worker and his family.

Section 8(d)(1) of the Act provides:

"If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in cases compensated under the specific schedule set forth in paragraph (e) of this Section, receive compensation for the duration of his disability, *subject to the limitations as to maximum amounts fixed in paragraph (b) of this Section,* equal to 66²/₃ % of the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." (Emphasis added.) (820 ILCS 305/8(d)(1) (West 1992).)

Under section 8(d)(1), an employee who becomes partially incapacitated may receive compensation equal to 66²/₃ % of the difference between what he would have been able to earn had he not been injured, and what he is earning or could earn after the injury, subject to the limitations set forth in section 8(b). Unfortunately, section 8(b) contains more than one maximum limitation provision. Section 8(b)(4) provides in pertinent part:

*"All weekly compensation rates provided under subparagraphs 1, 2 and 2.1 of this paragraph (b) of this Section shall be subject to the following limitations:*

The maximum weekly compensation rate from July 1, 1975, except as hereinafter provided, shall be 100% of the State's average weekly wage in covered industries under the Unemployment Insurance Act, that being the wage that most closely approximates the State's average weekly wage.

The *maximum weekly compensation rate, for the period July 1, 1984, through June 30, 1987, except as hereinafter provided, shall be $293.61.* Effective July 1, 1987 and on July 1 of each year thereafter the maximum weekly compensation rate, except as hereinafter provided, shall be determined as follows: if during the preceding 12 month period there shall have been an increase in the State's average weekly wage in covered industries under the Unemployment Insurance Act, the weekly compensation rate shall be proportionately increased by the same percentage as the percentage of increase in the State's average weekly wage in covered industries under the Unemployment Insurance Act during such period.

The maximum weekly compensation rate, for the period January 1, 1981 through December 31, 1983, except as hereinafter provided, shall be 100% of the State's average weekly wage in

covered industries under the Unemployment Insurance Act in effect on January 1, 1981. Effective January 1, 1984 and on January 1, or each year thereafter the maximum weekly compensation rate, except as hereinafter provided, shall be determined as follows: if during the preceding 12 month period there shall have been an increase in the State's average weekly wage in covered industries under the Unemployment Insurance Act, the weekly compensation rate shall be proportionately increased by the same percentage as the percentage of increase in the State's average weekly wage in covered industries under the Unemployment Insurance Act during such period.

From July 1, 1977 and thereafter such maximum weekly compensation rate in death cases under Section 7, and permanent total disability cases under paragraph (f) or subparagraph 18 of paragraph (3) of this Section, and for temporary total disability under paragraph (b) of this Section, and for amputation of a member or enucleation of an eye under paragraph (e) of this Section shall be increased to $133^1/3$ % of the State's average weekly wage in covered industries under the Unemployment Insurance Act." (Emphasis added.) 820 ILCS 305/8(b)(4) (West 1992).

Previous decisions by this court have addressed this issue. In *General Electric Co. v. Industrial Comm'n* (1986), 144 Ill. App. 3d 1003, 495 N.E.2d 68, the employer argued that section 8(d)(1) wage differential awards were subject to the limitation set forth in section 8(b)(2). The court held that General Electric waived this issue by failing to assert it in the circuit court, but nevertheless went on to express its disagreement with General Electric's position. Citing *United Airlines v. Industrial Comm'n* (1980), 89 Ill. App. 3d 387, 411 N.E.2d 1009, the court stated that while section 8(b)(2) fixes minimum levels of certain compensation in various alternative situations, it did not fix the maximum amount of earning loss benefits which may be awarded under section 8(d)(1). The court then concluded that the limitations as to maximum amounts of wage differential awards referred to in section 8(d)(1) are set forth in sections 8(b)(4) and 8(b)(5).

In *Bohannon v. Industrial Comm'n* (1992), 237 Ill. App. 3d 989, 606 N.E.2d 527, we rejected claimant's argument that the proper maximum rate applicable to wage differential awards was the TTD rate rather than the PPD rate, and held that "[t]he proper maximum rates in determining permanent disability benefits are found in section 8(b)(4) of the Act." *Bohannon*, 237 Ill. App. 3d at 994, 606 N.E.2d at 530.

In *Fernandes v. Industrial Comm'n* (1993), 246 Ill. App. 3d 261, 615 N.E.2d 1191, this court reversed the Commission's finding that while section 8(d)(1) referred to the limits found in section 8(b), the

language of section 8(b) was ambiguous as to which limit therein was applicable, and that section 8(b) could not be read as limiting a claimant's award to the maximum allowed for permanent partial disability. In so doing, we stated:

"In looking at section 8(b), sections 8(b)(1) and (b)(2.1) are concerned with calculating and setting minimum rates for temporary total disability and compensation rates for awards under sections 8(c), (d)(2) and (e) of the Act. Section 8(b)(2) covers compensation in all cases other than those covered by sections 8(b)(1) and (b)(2.1); that is, sections 8(d)(1) and 8(f). Section 8(b)(4) establishes the maximum weekly compensation payable under awards referred to in sections 8(b)(1), (b)(2) and (b)(2.1). Therefore, as stated in *General Electric*, we find the maximum rate contained in section 8(b)(4) applies to section 8(d)(1) awards." *Fernandes*, 246 Ill. App. 3d at 269, 615 N.E.2d at 1197.

Taken together, these cases stand for the proposition that while sections 8(b)(1), 8(b)(2), and 8(b)(2.1) establish minimum compensation amounts, section 8(b)(4) sets the maximum amount. Section 8(d)(1) incorporates the maximum limit set forth in section 8(b)(4), but section 8(b)(4) sets forth several maximum limits and section 8(d)(1) does not specify which limit is applicable.

Sections 8(b)(1), 8(b)(2) and 8(b)(2.1) provide rates of compensation for temporary total disability awards; awards other than those under sections 8(b)(1), 8(c), 8(d)(2) (*i.e.*, 8(d)(1) and 8(f)), and 8(e); and awards under section 8(c), 8(d)(2), and 8(e), respectively, and set minimum rates of compensation for each. Section 8(b)(4) sets the maximum rate of compensation available under sections 8(b)(1), 8(b)(2), and 8(b)(2.1). Therefore, under sections 8(b)(1) and 8(b)(2), a claimant is entitled to compensation equal to $66^2/3\%$ of his average weekly wage, but not less than the amounts set forth in the schedule therein and not more than the following maximums:

From July 1, 1975, through December 31, 1980—100% of the State's average weekly wage.

From January 1, 1981, through December 31, 1983—100% of the State's average weekly wage in effect on January 1, 1983.

From January 1, 1984, through June 30, 1984—100% of the State's average weekly wage in effect on January 1, 1983, increased by a percentage equal to the percentage increase in the State's average weekly wage for the preceding 12 months.

From July 1, 1989, through June 30, 1987—$293.61

From July 1, 1987, to the present—$293.61, increased by a percentage equal to the percentage increase in the State's average weekly wage for the preceding 12 months.

Likewise, under section 8(b)(2.1), a claimant is entitled to 60% of his

average weekly wage, but not less than the schedule set forth in section 8(b)(2.1) and not more than the maximums set forth above. After June 30, 1977, a claimant receiving an award under section 8(b)(1), 8(f), or 8(e) is entitled to compensation at the rate of $66\frac{2}{3}\%$ of his average weekly wage up to a maximum of $133\frac{1}{3}\%$ of the State's average weekly wage.

It appears, therefore, that the rate of wage differential awards under section 8(d)(1) is equal to $66\frac{2}{3}\%$ of the difference between the employee's average pre-injury earning potential in his occupation and his average postinjury earning potential, up to the limits set forth in section 8(b)(4).

As the ISFL points out, however, there are a great many workers who, because of talent or industry, earn well in excess of the average weekly wage. These workers become accustomed to, and reliant upon, such wages and assume long-term economic commitments based thereon. When such a worker suffers a disabling accident, a compensation award limited to the State's average weekly wage can still leave him unable to meet these obligations. This is exacerbated in cases such as the present, because the maximum amount of the award is even further limited by the provisions of section 8(b)(4). In the present case, the arbitrator awarded the claimant $380.53 per week, this being $66\frac{2}{3}\%$ of the difference between $810.80, the amount he could earn as an ironworker, and $240, the amount he was able to earn as a "pole man." At the time of his injury, the State's average weekly wage was $425.23. The Commission was required to reduce the award to $313.51 because of the limitations set forth in section 8(b)(4).

We are bound by the language of the statute, and so I must reluctantly agree with the majority in affirming the Commission's decision to reduce claimant's award to $313.51 per week, but I believe that the arbitrary limits imposed by section 8(b)(4) are not in keeping with the remedial nature of the Act. Clearly, limiting a worker's recovery to a percentage of the State's average weekly wage, be it the 100% figure advocated by the claimant, or the $133\frac{1}{3}\%$ figure urged by the ISFL in its *amicus* brief, will not fully compensate those workers who earn considerably more than the average weekly wage, but either would better serve the purpose of the Act.

At present, a worker who is totally disabled can receive up to $133\frac{1}{3}\%$ of the State's average weekly wage, and if the disability is permanent, he can receive incremental supplements to those benefits through the "Rate Adjustment Fund" pursuant to section 8(g) (820 ILCS 305/8(g) (West 1992)). Together, these provisions provide additional economic relief for those whose weekly wage substantially

exceeds the State's average weekly wage. No such protection exists, however, for a worker who is injured but retains some residual abilities and associated minimal earning potential. Such a worker, seeking wage differential benefits under section 8(d)(1), has his award limited by the provisions of section 8(b)(4). As occurred in the present case, not only will he suffer an economic loss by virtue of the fact that his weekly wage exceeds the State's average weekly wage, he suffers even further loss because of the arbitrary limits imposed by section 8(b)(4), limits which make the maximum award even less than the State's average weekly wage. In my view, this can work a substantial hardship on a partially disabled worker seeking benefits under section 8(d)(1) where his residual earning potential is minimal. I also believe that this hardship is best ameliorated by setting the maximum at $133^{1}/3\%$ of the State's average weekly wage, as advocated by the ISFL. This would give the Commission the flexibility to more adequately compensate those workers whose average wage substantially exceeds the State's average weekly wage and those whose residual earning potential does not adequately make up the difference, and better effectuate the purpose of the Act. Such a move, however, cannot be made by the courts, but must be made by the legislature.